521 So.2d 399 (1988)
Deloches Ducote, Wife of/and Annis DUCOTE, Sr.
v.
Dr. Matthew ALBERT, Dr. Russell Levy and Dr. G. Gregory Gidman.
No. 87-C-0841.
Supreme Court of Louisiana.
February 29, 1988.
Concurring Opinion March 22, 1988.
William Bologna, Habans & Bologna, New Orleans, for applicant.
Donna Cummings, Cummings, Cummings & Dudenhefer, New Orleans, for respondent.
COLE, Justice.[*]

ISSUE
The issue in this medical malpractice action is whether La.R.S. 23:1032 provides tort immunity to a "company doctor," who shares full-time employment with the plaintiff by the same employer, for the doctor's alleged misdiagnosis and failure to treat plaintiff's work-related injury which resulted in a worsening of the injury. La.R.S. 23:1032 provides in part:
The rights and remedies herein granted to an employee or his dependent on account of an injury ... for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee ... against his employer ... or employee of such employer ... for said injury.... (Emphasis added).

*400 FACTS
Plaintiff was a laborer employed by American Cyanamid Company at its chemical manufacturing plant. On July 18, 1985, plaintiff injured his left hand while on the job. He was referred to Dr. Matthew Albert, a licensed physician who was employed by American Cyanamid on a full-time basis to render medical services to plant employees at a medical facility located on the plant grounds. Dr. Albert treated him for a sprain and told him to return to work. About a week later, plaintiff's condition worsened, and Dr. Albert referred him to other physicians for treatment. Plaintiff was later diagnosed as suffering from a scapholunate dissociation with torn wrist ligaments and a 35% loss of wrist function.
Plaintiff filed a medical malpractice suit against Dr. Albert and others, alleging Dr. Albert's incorrect diagnosis and failure to treat the injury properly caused him to suffer a permanent partial disability of his left wrist. Dr. Albert filed the peremptory exception raising the objection of no cause of action, asserting he and plaintiff were co-employees and plaintiff's exclusive remedy against him was limited by La.R.S. 23:1032 to worker's compensation. The doctor's deposition was taken in support of his exception in which he testified he was a full-time employee of American Cyanamid. The exception was then converted into a motion for summary judgment which the trial court granted, and dismissed Dr. Albert from the action.
The court of appeal reversed and rendered judgment denying Dr. Albert's motion. 503 So.2d 85. That court held Dr. Albert was an independent contractor under La.R.S. 23:1021(6), rather than plaintiff's co-employee, and thus was liable in tort for any negligent treatment which worsened the original injury. We granted certiorari. 506 So.2d 1215. We now affirm, our reasons differing somewhat from that of the court of appeal.

ANALYSIS
While we agree Dr. Albert is personally liable in tort for any medical malpractice harming the plaintiff, we do not hold a company doctor or plant physician such as Dr. Albert is an independent contractor for all purposes as regards the Worker's Compensation Law. We simply hold, under the circumstances of this case, Dr. Albert was not a co-employee of the plaintiff entitled to immunity from tort liability. The relationship between the plaintiff and Dr. Albert at the time of the alleged medical malpractice was that of doctor-patient. Thus, Dr. Albert's liability to the plaintiff is governed by general tort law and the special rules for medical malpractice set forth in the Louisiana Medical Malpractice Act. La.R.S. 40:1299.41 et seq.
It may be that the relationship between Dr. Albert and American Cyanamid Company can be characterized for some purposes as that of independent contractor and principal. It may even be that for some purposes the relationship is that of employee-employer. However, this case presents only the narrow issue of whether the Louisiana Worker's Compensation Law provides a company doctor with immunity from civil liability for medical malpractice against a patient. We believe it does not.
In analyzing the question presented in this case, we adopt a theory used by some of our sister states. This theory, sometimes referred to as the "dual capacity doctrine," recognizes a company doctor functions simultaneously in two roles, each carrying a different set of legal obligations. See generally, Jenkins, "The No-Duty Rule in New York: Should Company Doctors Be Considered Co-Employees?" 9 Hofstra L.Rev. 665 (1981). The dual capacity doctrine acknowledges although some indicia might indicate a company doctor is a co-employee of an injured company employee, the doctor is nevertheless amenable to suit for malpractice because he also occupies another position with respect to the injured employee. The other position is that of medical doctor, and it carries with it obligations outside the scope of worker's compensation. Under the dual capacity doctrine, a company doctor is liable for breach of duty attendant to his role as a medical professional, regardless of co-employment *401 status. Id. at 685. As will be shown more fully below, the dual capacity doctrine is consistent with the policy of the Louisiana Worker's Compensation Law and the jurisprudence of this state relative to employee status for purposes of that law.

THE DUAL CAPACITY APPROACH
The California Supreme Court first recognized company physicians operate in a dual capacity in Duprey v. Shane, 39 Cal. 2d 781, 249 P.2d 8 (1952). The plaintiff was employed in a chiropractic clinic. She experienced shoulder and arm pain after grabbing a patient who had begun to fall off the examination table; and was treated by her employer, Dr. Shane, and by her fellow employee, Dr. Harrison. Plaintiff alleged the treatments aggravated her injuries and resulted in further disability. She was later diagnosed as having an injury which was the result of the chiropractors' treatment of her following the original injury.
The Court held Mrs. Duprey could maintain an action in tort against her employer, Dr. Shane, and against her co-worker, Dr. Harrison. The Court found there was no reason why Mrs. Duprey should lose the right to sue for malpractice just because the medical treatment was rendered by her employer. The Court noted Dr. Shane exhibited two relationships toward his employee, that of an employer and that of a doctor. Id. at 15. "In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but did so as an attending doctor and his relationship to [plaintiff] was that of doctor and patient." Id. at 15. As to the malpractice action against Dr. Harrison, plaintiff's co-worker, the Court found Dr. Harrison was in the same position he would have been in had plaintiff been referred to him by her employer for the treatment of this work-related injury. Therefore, plaintiff could maintain a medical malpractice action against a fellow employee.
A more recent jurisdiction to adopt the dual capacity approach is that of Colorado. In Wright v. District Ct. In & For City of Jefferson, 661 P.2d 1167 (Colo.1983), the Colorado Supreme Court held a medical malpractice action could be filed against a plant physician by an employee who had been treated by the physician. The physician was employed by Adolph Coors Company to provide medical services on a full time basis. The employee, Troy Cobb, was treated by the physician, Dr. Lloyd Wright, for back injuries suffered in an on-site accident. Cobb sued Dr. Wright for alleged misdiagnosis of the injury and for allowing Cobb to return to work before Cobb had fully recuperated. The Court found Dr. Wright's status as a co-worker of Cobb's was not a total bar against malpractice actions brought by employees like Cobb.
Dr. Wright's relationship with Cobb was identical to that of a doctor in private practice with a patient. This relationship is distinct from the employment relationship; it entails different rights and duties. Clearly, a private doctor would be liable to Cobb for malpractice. There is no logical reason to treat company physicians differently. Thus, the rule which immunizes employees from suits by their co-employees for negligence within the course of employment is inapplicable here.
Wright, 661 P.2d at 1168.
The Colorado Court rejected the reasoning adopted by Michigan and New York who have declined to apply the dual capacity approach to malpractice occurring at a company clinic, but allow malpractice actions by public employees who are treated by hospitals where they work when the hospital also treats the general public.
It is not the public practice of medicine which creates a dual capacity for the attending physician; it is the very practice of medicine, with its special duties and responsibilities, which charges a doctor with all of the obligations which normally arise in the doctor-patient relationship. One's need for protection from medical malpractice is not affected by the configuration of the employment relationship or the location of treatment.
Wright, 661 P.2d at 1170.
The Court also discussed reasons why allowing malpractice actions to be brought *402 against physicians is not inconsistent with either the policies underlying their Workmen's Compensation Act or its general rule of co-employee immunity. The five reasons cited by the Colorado Court are discussed in more detail in Jenkins, "The No-Duty Rule in New York: Should Company Doctors Be Considered Co-employees?" 9 Hofstra L.Rev. 665, 675-80 (1981). They were summarized in support of the dual capacity approach, as follows:
First, the worker's compensation scheme is based on the fact that most workplace accidents occur without fault or in a manner making assignment of fault nearly impossible. This assumption is not relevant to injuries resulting from medical malpractice, which occurs away from the production area, is easier to identify, and can be judged in light of ascertainable medical standards.
Second, co-employee immunity embodies a recognition that workplace accidents are less a result of unreasonable conduct than a concomitant of a highly technological age. Unlike the occupational accidents which are an inevitable consequence of working with complex equipment, medical malpractice is neither inevitable nor a risk that is inherent in the production process.
Third, worker's compensation is based in part on the premise that the employer is in a better position than a co-employee to shoulder the risk of an industrial accident. But the higher income and professional liability insurance coverage of company physicians set them apart from the average co-employee.
Fourth, a company physician does not participate in the mutual compromise of rights which is the essence of the worker's compensation scheme. Because the doctor is removed from the production area, he or she is extremely unlikely to be injured on the job. Thus, realistically, the doctor is not sacrificing a common law right to sue in exchange for co-employee immunity.
Fifth, the worker's compensation law provides employers with an economic incentive to deter future accidents by careful job training, supervision, and organization of the workplace. But because a company lacks significant control over the professional acts and exercise of judgment by a company physician, extending co-employee immunity to the physician carries little deterrent effect against the company. Most importantly, co-employee immunity removes almost all deterrence to negligence by the company physician, who, alone among doctors, would be invulnerable to malpractice actions.
Thus, leaving company physicians open to negligence suits satisfies the compensatory purposes of worker's compensation without frustrating the basic principle of a mutual compromise of rights. The dual capacity approach leaves the employer liable under worker's compensation for injuries which the employee is exposed to by employment in the industryinjuries which arise out of a risk or hazard to which the employee is exposed in the performance of the job.
Wright, 661 P.2d at 1170, 1171.
The Colorado court concluded medical malpractice was not "an inherent risk of the brewing business." Id. at 1171. Dr. Wright, in treating Cobb, owed Cobb the same duty owed to any other patient who is treated by a doctor. Thus, under the Colorado Worker's Compensation Act, Dr. Wright operated in two capacities, that of a physician and also that of a co-worker towards Cobb. Cobb was allowed to sue Dr. Wright for malpractice because the alleged malpractice "took place in the course of the doctor-patient relationship and outside the scope of the employment relationship...." Id.
We agree with the reasoning of the California and Colorado courts and note several other jurisdictions have also adopted the dual capacity approach. Vesel v. Jardine Mining Co., 110 Mont. 82, 100 P.2d 75 (1939); Robbins v. Seekamp, 444 A.2d 537 (N.H.1982); Guy v. Arthur Thomas Co., 55 Ohio St.2d 183, 378 N.E.2d 488 (1978); Tatrai v. Presbyterian University Hospital, 497 Pa. 247, 439 A.2d 1162 (1982). The rationale underlying this duty-based doctrine *403 was perhaps best explained by a California court of appeal:
Characterizing a defendant as an "employer" [or co-employee] and therefore automatically cloaked with immunityis a simplification that tends to cloud proper analysis. The focus should be on the defendant's responsibility for his own acts or omissions where a different duty to take care or make sure that care is taken arises than that imposed on an employer [or co-employee].
Our society is pluralistic. The same person (real or artificial) from time to time obviously adopts many roles in relationship with others....
* * * * * *
... The dual capacity concept is within the highest tradition of analytical jurisprudence. Dual capacity recognizes the long accepted doctrine that every person is a bundle of rights, no rights, liabilities and immunities.
Douglas v. E. & J. Gallo Winery, 69 Cal. App.3d 103, 110, 137 Cal.Rptr. 797, 801 (5th Dist.1977).

POLICY OF THE WORKER'S COMPENSATION LAW
The dual capacity doctrine comports with the policy of the Louisiana Worker's Compensation Law. As this Court recently noted, the Louisiana Worker's Compensation Law was enacted in response to the growth of modern industry, where workplace accidents are inevitable. Brooks v. Chicola, 514 So.2d 7, 11 (La.1987). The normal rules of tort liability were no longer viable under such conditions, so the tort system was replaced by a system of compensation laws based upon the obligation to support injured workers without regard to fault. Id.
Compensation represents a compromise between the employer and the employee in which each party surrenders certain advantages in order to gain others. The employer gives up the immunity he would enjoy under tort law if he were not at fault; the employee gives up the right to full compensation for the right to collect some compensation for any injury sustained on the job. W. Malone and A. Johnson, "Worker's Compensation Law and Practice," 13 La. Civil Law Treatise§ 32, at 40 (2nd Ed. 1980). Similarly, fellow workers are given immunity when they injure a co-worker on the job. La.R.S. 23:1032. Just as workplace accidents in general often occur without fault and are an inevitable risk of the workplace, so also do many accidents involving fellow workers occur without fault. Co-employee immunity from civil liability is also based on a compromise of rights. Workers benefit by exchanging the possibility of full tort recovery against co-employees for the certainty of worker's compensation benefits; they also gain immunity from suit for the potential situation where they negligently injure a co-employee.
These considerations do not apply to the malpractice of a company doctor. When a company doctor aggravates injuries suffered previously by an employee, it is not an inevitable risk inherent in the production process. The same risk would exist if the employee sought private treatment away from the workplace. We see no reason why a doctor should be able to acquire the shelter of immunity "by the simple expedient of joining the company's fringe-benefit program or changing the form of his compensation from fee-for-service to fixed retainer." Jenkins, supra, at 680. The result would be an irrational patchwork where "some malpractitioners are immune from suit while others are not, depending on the arrangements worked out with their employers." Id.
One final consideration indicates the correctness of our decision that a company doctor is not immune from civil liability for his malpractice in a case such as this. The same policy reasons which prompted the legislature to exclude independent contractors from coverage under the Louisiana Worker's Compensation Law mandate that we hold company doctors liable for their malpractice against company employees.
Independent contractors are excluded from the Worker's Compensation Law because the principal does not control the means of the contractor's work. La.R.S. *404 23:1021; see also, Lushute v. Diesi, 354 So.2d 179 (La.1977); Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99 (1922); Myers v. Newport Co., 17 La.App. 227, 135 So. 767 (1st Cir.1931). Without control over the contractor, the principal has little or no ability to deter accidents or to protect a worker from negligent acts. Most significantly, Dr. Albert, as would any doctor, had control over the means by which his work was accomplished. As the court of appeal noted below, an employer is hardly in a position to control the acts of a hired professional such as a doctor. Ducote v. Albert, 503 So.2d 85, 86 (La.App. 5th Cir. 1987). This being so, a company doctor should not be immune from civil liability as would any employee of the company.

CONCLUSION
We hold a company doctor is not immune from medical malpractice tort liability under the Louisiana Worker's Compensation Law. A doctor, in his role as a medical professional, is not under the control of the company, and in this respect his role is similar to that of an independent contractor. We recognize when a doctor, such as Dr. Albert, is hired on a full-time basis by a company, he will have many of the characteristics of an employee. His schedule may be set by the company; the company may provide him with insurance coverage and pension benefits; the company may hire the doctor's staff and provide the equipment and office space. However, when the doctor treats a patient he treats the patient as a doctor. The relationship cannot fairly be characterized as merely one of two co-employees interacting on the job.
On the other hand, we recognize that in those aspects of the job which do not involve the exercise of medical judgment the company doctor possesses the characteristics of an employee of the company. For this reason we are unwilling to follow the court of appeal's reasoning below and say a company doctor is for all purposes an independent contractor. Rather, we prefer the dual capacity approach which recognizes that a company doctor has various roles. Vis-a-vis his patients he is a doctor, not a co-employee. Vis-a-vis the company, he may be an employee or he may be an independent contractor. That determination is to be made according to the jurisprudential rules developed to determine when a person is an employee and when he is an independent contractor.

DECREE
For the foregoing reasons, we affirm the judgment of the court of appeal denying the motion for summary judgment and remanding for further proceedings. Summary judgment is inappropriate as a matter of law.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The majority decision, holding that this company doctor was not a co-employee entitled to tort immunity under the circumstances of this case, purports to apply the dual capacity doctrine. However, the majority decision, as well as the California and Colorado cases discussed therein, turn on the logic that an injury, which results from medical malpractice in the treatment of an industrial injury, is not one which arises out of a risk to which the claimant is exposed in the performance of his employment duties. Rather than adopt the dual capacity doctrine, I would reach the same result by holding that, at least as to the doctor's claim of tort immunity as a co-employee, the physician-caused "injury by accident" was not one "arising out of" plaintiff's employment, as required by La.R.S. 23:1031.[1]
*405 The risk that an employee in an industrial plant may be injured by the negligence of a co-employee in the operation of the plant is a risk which clearly arises out of employment.[2] This risk is vastly different from the risk that an employee, after being injured in an industrial plant, will have his condition worsened by the doctor at some point during the subsequent course of treatment of that work-related injury. Under such circumstances (which allegedly occurred in the present case), one cannot reasonably conclude, as to the aggravation, that the risk of medical malpractice was greater for the plaintiff than for a person not engaged in the employment, or that the risk of medical malpractice was one associated with plaintiff's particular employment, or that the injury would not have occurred if the conditions and obligations of employment had not placed plaintiff at the location where the medical malpractice happened.[3] Any person with an injured wrist faces the same risk of medical malpractice in seeking treatment, no matter how the initial injury was sustained.[4] See Laungharn v. Savoie, *406 480 So.2d 325 (La.App. 4th Cir.1985); Peters v. Charity Hospital of Louisiana, 490 So.2d 505 (La.App. 4th Cir.1986).
Perhaps the majority did not rest its decision squarely on the "arising out of employment" deficiency because of a reluctance to bind the court in a future case in which an employee may seek compensation for such an aggravation. A holding that the injury did not arise out of plaintiff's employment for purposes of determining tort immunity would not necessarily require a holding that another claimant under the same circumstances would not be entitled to compensation. Because the remedial purpose of workers' compensation mandates liberal interpretation in favor of coverage and because statutes conferring immunity must be strictly construed, the extent of an employer's immunity in a tort action need not necessarily coincide with the extent of the same employer's liability in a compensation action. See Rowe v. Northwestern National Insurance Co., 471 So.2d 226 (La.1985) (Lemmon, J. concurring).[5] Likewise, a co-employee's immunity in tort is not necessarily coextensive with the compensation liability of the employer of that same co-employee.
In this tort action, I would hold that the co-employee is not entitled to immunity under La.R.S. 23:1032 because the injury, allegedly resulting from medical malpractice in the treatment of an earlier industrial injury, did not arise out of plaintiff's employment.
NOTES
[*] Judge Robert J. Klees of the Court of Appeal, Fourth Circuit, participated in this case as a Justice ad hoc in place of Justice Calogero, who was recused.
[1] The court of appeal held that the doctor was an independent contractor rather than an employee of plaintiff's employer. I am disinclined to conclude that this doctor, who practiced medicine full-time at American Cyanamid's plant clinic during hours established by the company, who used the support staff, equipment and supplies furnished by the company, who was paid a fixed salary not calculated by the number of patients treated, who had no other income and no other patients, and who received the same fringe benefits such as retirement and medical insurance as other employees, was not an employee of American Cyanamid.
[2] An injury occurs in the course of employment when it takes place during the time of employment and at a place contemplated by the employment. Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5 (La.1973); Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932). Thus, the focus of the "course of employment" requirement is on the relationship in terms of time, place and worker activity between the employment and the risk which results in the injury. W. Malone and H. Johnson, 13 Louisiana Civil Law TreatiseWorkers' Compensation § 141 (2nd 3d.1980).

La.R.S. 23:1031's additional requirement that the accident "arise out of" the employment focuses on the character or origin of the risk which results in the injury. W. Malone & H. Johnson, supra. The requirement is met when the injury results from some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Lisonbee, supra; Kern, supra. See also Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). The requirement may also be met when the risk of employment from which the injury results is a greater risk for the worker than for a person not engaged in the employment. Guidry, supra; Myers v. Louisiana Railway & Navigation Co., 140 La. 937, 74 So. 256 (1917). Because a strictly applied "increased risk" test was obviously too narrow, the courts have also developed other analyses which inquire whether the risk is one associated with the particular employment or whether an award of compensation, regardless of the nature of the risk which caused the injury, is justified because the conditions and obligations of the employment placed the employee in the position where he was injured, such as when the employee is struck by lightning on the job. W. Malone and H. Johnson, supra, at § 149.
This latter theory of emphasizing the placement at the scene caused by conditions and obligations of employment is referred to as "positional risk". Under the positional risk doctrine, an injury arises out of employment if it would not have occurred but for the fact that the conditions and obligations of employment placed the employee in the position where he was injured by some neutral force that was neither associated with the employment nor personal to the employee. 1. A. Larson, Workmen's Compensation § 6.50 (1985).
The dual requirements of "course of employment" and "arising out of employment" should not be understood as entirely separate elements to be rigidly and independently exacted. A strong showing of one requirement may offset a relatively weak showing of the other, but few decisions have awarded compensation when there was a weak showing as to both requirements. Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5 (La.1973); Mitchell v. Employers Mutual Liability Insurance Co., 341 So.2d 35 (La.App. 3rd Cir.1977), cert. denied 342 So.2d 1121 (Watson, J., concurring); Raybol v. Louisiana State University, 520 So.2d 724 (La.1988).
[3] The record does not indicate any employment requirement that plaintiff had to be treated by the company doctor.
[4] From the standpoint of a normal causation analysis in tort cases, the tort liability of the original tortfeasor extends to a worsening of the initial injury by negligent medical treatment, because the risk inherent in the course of treatment is caused by the initial breach of duty which necessitated the treatment. The original tortfeasor is then entitled to indemnity or contribution from the negligent health care provider. However, the analysis in a tort case to determine the causal relationship between the tortfeasor's duty and the risk created by a breach of that duty is not necessarily the same as the analysis in a compensation case to determine whether the injury arose out of the plaintiff's employment. In the tort case the focus is on the relationship between the tortfeasor's duty and the risk to the tort victim from a breach of that duty, and foreseeability or ease of association between the tortfeasor's fault and the plaintiff's injury is an important element in the analysis. In the compensation case fault and foreseeability are essentially irrelevant, and the focus is on the relationship between the employee's injury (whether caused by the employee himself, a co-employee or a third person) and the employment which may passively give rise to an injury, but does not actively cause an injury. See also W. Malone & H. Johnson, supra, at § 236, which discusses the liability of the employer for compensation for aggravation of compensable injuries by medical malpractice, but suggests a resort to tort concepts to determine how far and to what risks compensation liability ought to extend, a suggestion that I would decline to adopt.
[5] Professor Larson, advocating the theory that tort immunity normally coincides with compensation liability, points out in 2A A. Larson, Workmen's Compensation § 72.61(c) (1987), the universal rule that an employer is liable in compensation for aggravation of a compensable injury by a doctor's negligence and suggests that the employer (and presumably the doctor if an immune co-employee) cannot be sued in tort as a third party when the negligence is by a company doctor.