610 So.2d 1097 (1992)
Kennith W. ROBERTS
v.
The ORPHEUM CORPORATION, Southern Elevator Co., Inc., the Mathes Group, a Professional Architectural Corporation, and the New Orleans Philharmonic Symphony Society, and
Kennith W. Roberts
v.
The ORPHEUM CORPORATION, et al.
Nos. 91-CA-2076, 91-C-2204.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1992.
Rehearing Denied January 13, 1993.
*1098 Frank B. Hayne, and William T. Abbott, New Orleans, for appellant/respondent Kennith W. Roberts.
Ernest L. O'Bannon, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for appellee Concrete Busters of Louisiana, Inc.
Regel L. Bisso, Hulse, Nelson & Wanek, New Orleans, for appellees The Orpheum Corp. and The New Orleans Philharmonic Symphony Soc.
William E. Wright, Jr., Gary J. Giepert, Baldwin & Haspel, New Orleans, for appellee/relator The Mathes Group, Etc.
Before BYRNES, CIACCIO and LANDRIEU, JJ.
LANDRIEU, Judge.
In this opinion, we have consolidated the appeal of the plaintiff, Kennith W. Roberts, and the writ of certiorari granted in favor of the defendant, the Mathes Group, to consider the judgment of the trial court rendered on June 24, 1991. The matter was before the trial court on motions for summary judgment filed by the defendants, the Orpheum Corporation, the New Orleans Philharmonic Symphony Society, the Mathes Group, a Professional Architectural Corporation, and Concrete Busters of Louisiana, Inc. Finding some merit in appellant's and relator's arguments, we reverse that judgment in part and remand for further consideration.

FACTS AND PROCEDURE:
On or about August 23, 1989, Kennith W. Roberts was employed as a member of the stage crew at the old Orpheum Theater, under the direct supervision of Richard Fitzgerald, the technical director of the New Orleans Symphony. Having been directed to set up display tables in the lobby of the building, Roberts intended to take the elevator to the basement to obtain the equipment. However, he did not notice that the car was not at the landing when he opened the elevator doors. He therefore stepped into the empty elevator shaft and fell to the bottom, where he sustained serious injury.
At the time of the accident, the building was owned by the Orpheum Corporation. The Corporation had acquired title on May 8, 1989, by Act of Conveyance of Immovable Property and Assumption of Indebtedness by and between the New Orleans Philharmonic Symphony Society and the Orpheum Corporation. These parties entered into an agreement prior to the transfer, whereby the Orpheum Corporation leased the premises to the Symphony, effective April 1, 1989. According to Section 13.01 of the Lease Agreement, the Symphony
accept[ed] the Leased Premises in their present condition, and assume[d] full responsibility for the Leased Premises, including, without limitation, all liability *1099 assumable by a tenant under Louisiana Revised Statutes 9:3221.
In late 1988, a renovation project for the building had been initiated in anticipation of the reopening of the Symphony in March of 1989. Although work on the initial phase of the project was substantially complete at the time of the accident, some work did coincide with the staging of various scheduled productions.
The plans to renovate the existing building's exterior and to double the size of the lobby area were formulated by the Mathes Group, A Professional Architectural Corporation. This exterior modification included the addition of a building canopy, lighting, masonry and plaster work, new entry doors, and brick paving. For both the exterior and interior renovations, the Mathes Group provided, without compensation, architectural and engineering services. However, Francis J. "Tiger" Roussell, secretary/treasurer of Concrete Busters of Louisiana, Inc., was generally acknowledged to be the supervisor of the project. According to notes from a March 13, 1989 meeting regarding the status of the project, the participants agreed that a construction professional would have to be hired when Mr. Roussell was no longer able to supervise the job.
At that same meeting, there was discussion concerning future projects. It was noted that the elevator in the building required "attention," and Ed Mathes agreed to contact an elevator consultant. Al Hopper, a local elevator consultant, was contacted, and, in a May 26, 1989 letter to the president of the Symphony, it was reported that the existing elevator equipment required manual operation, but had been found to be "in serviceable condition." The installation of a new automatic elevator was estimated by the consultant to cost Two Hundred Thousand and No/100 ($200,000.00) Dollars, and the estimated construction cost for a hoist-way modification[1] was reported to be Four Thousand and No/100 ($4,000.00) Dollars. No action was taken with regard to either the replacement or the modification of the existing equipment.
However, the Symphony's engineer, Jeff B. Montalbano, testified that, after he was hired in June of 1989, he arranged to resume the Symphony's lapsed contract with American Crescent Elevator Corporation for the maintenance of the elevator. He indicated that, according to the statement from the elevator corporation, its employees thereafter checked and oiled the car, greased the rails, and installed buzzers on each of the three (3) floors of the theater building. A city inspector then granted a permit for the operation of the elevator for a one (1) year period. These inspections by both the elevator company and the city had been completed prior to the accident at issue.
Although Roberts sought and received workers' compensation benefits on the basis of his employment with the Symphony, he filed a petition for damages on November 20, 1989, against the New Orleans Philharmonic Society [sic] as well as against the Orpheum Corporation, Southern Elevator Co., Inc., and the Mathes Group. By his Third Supplemental and Amended Petition, filed on May 31, 1990, Roberts added Concrete Busters of Louisiana, Inc. as an additional defendant. The Symphony, the Orpheum Corporation, the Mathes Group, and Concrete Busters each filed a motion for summary judgment, which motions were finally heard in the trial court on June 21, 1991. By judgment rendered on June 24, 1991, the motions filed by the Symphony, the Orpheum Corporation, and Concrete Busters were granted. The court concluded that there were no genuine issues of material fact to be resolved in the suit against these defendants and that they were entitled to a judgment of dismissal as a matter of law. The motion filed by the Mathes Group was denied. The plaintiff, Roberts, has appealed that portion of the judgment which dismissed the Symphony, the Orpheum Corporation, and Concrete Busters. On the application of the Mathes *1100 Group, this court granted certiorari in order to consider the validity of the trial court's denial of its motion.

DISCUSSION:
The Orpheum Corporation:
Under Louisiana law, La.Civ.Code Ann. arts. 2317, 2322 (West 1979) and 2695 (West 1952), the owner/lessor generally is liable for the condition of the leased premises. The Legislature has provided, however, an exception to that owner/lessor liability should the lessee of the premises assume the responsibility by the contract of lease. Furthermore, this court and the Louisiana Supreme Court have concluded that the provisions of the lease can affect third parties as well as govern the rights between the parties. Mendoza v. Seidenbach, et al., 598 So.2d 404, 405 (La.App. 4th Cir.1992) (citing Gilliam v. Lumbermens Mutual Casualty Co., 240 La. 697, 124 So.2d 913 (1960); Slaughter v. Coleman, 490 So.2d 570 (La.App. 4th Cir.1986)).
That exception to owner/lessor liability is embodied in La.Rev.Stat.Ann. § 9:3221 (West 1991), which provides that:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
Reliance by the owner of immovable property on this exception to liability requires that the lessee assume responsibility for the condition of the premises under the contract of lease, that the injury occur to either the lessee or anyone on the premises with the permission of the lessee, and that the owner neither knew nor should have known of the defect.
Pursuant to La.Code Civ.Proc.Ann. art. 966 (West 1984), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." The jurisprudence has provided that the burden is on the mover to show clearly that there is not a genuine issue of material fact in dispute. American Bank v. Saxena, 553 So.2d 836, 846 (La.1989). Once the motion for summary judgment has been made and supported by the moving party, La.Code Civ.Proc.Ann. art. 967 (West 1984) provides that the adverse party may no longer rest on the allegations or denials of his pleadings. At that point, the adverse party must show the existence of a genuine issue for trial by setting forth specific facts.
In support of its motion for summary judgment, the Orpheum Corporation offered a copy of the Lease Agreement between it and the Symphony. That document is certainly evidence of the Symphony/lessee's assumption of the responsibility for the condition of the leased premises, and the pleadings and depositions of record indicate the injured party's right to be on the premises. The owner's knowledge of the defect, however, is not addressed.
With this showing, the Orpheum/lessor failed to meet its burden under § 9:3221. Mendoza, 598 So.2d at 407. Although the Code of Civil Procedure does not require the use of affidavits by the mover to prove its right to summary judgment, the mover is required to resolve every material fact issue by either affidavit or supporting documentation before such judgment can be properly rendered.
Accordingly, the judgment rendered in favor of the Orpheum Corporation, which dismissed the plaintiff's claim against it, is reversed, and the matter is remanded to the trial court for further action in accordance with our ruling.
The Symphony:
It is undisputed that the Symphony is Roberts' employer. Under Louisiana law, La.Rev.Stat.Ann. § 23:1031 (West 1985), appellant's exclusive remedy is a claim for worker's compensation. The Louisiana Worker's Compensation Law was enacted as a compromise between the employer *1101 and the employee in a workplace where accidents are inevitable. Thereby, each party has surrendered certain rights to gain others. The employer has given up immunity under tort law to which he would be entitled if he were not at fault; the employee has given up the right to full compensation in order to collect some compensation for any injury sustained on the job. Ducote v. Albert, 521 So.2d 399, 403 (La.1988).
However, appellant insists that his claim against the Symphony is not based upon the employer's direct commission of a tort, but rather its contractual assumption of the liability of the owner of the building. In that regard, appellant suggests an application by analogy of the "dual capacity doctrine" which was adopted by our Supreme Court in the case of Ducote v. Albert. Id. at 400. Relying on this "dual capacity doctrine," the Ducote Court concluded that a company doctor is not immune from medical malpractice tort liability under the Louisiana Worker's Compensation Law. The Court reasoned that the considerations underlying the compromise inherent in worker's compensation did not apply to the malpractice of a company doctor. In addition, the Court noted that it is not an inevitable risk in the production process for a company doctor to aggravate injuries previously suffered by the employee and that the principal did not have control over the means by which the doctor's work is accomplished. Id. at 403. Such reasoning does not compel an extension of the "dual capacity doctrine" to the case under consideration.[2]
The risk of harm in the workplace was precisely the same whether the employer was the owner or the lessee of the premises. Furthermore, this employer specifically had control over the cause of injury. And, had the Symphony not transferred ownership of the premises to the Orpheum Corporation less than four (4) months earlier, a claim of strict liability would not have been available to Roberts against the property owner, his employer.
There is no right to sue, except as provided by statute. Furthermore, since the contract between the lessor and the lessee was entered into before the potential tort claim arose, the employee had no property right to a claim for damages. Section 9:3221 does not deny due process to the employee, Roberts, in this case. Fontan v. Estopinal, 529 So.2d 1330, 1333 (La.App. 5th Cir. 1988), writ denied 533 So.2d 17 (La.1988).
Accordingly, the judgment of the trial court, which rendered judgment in favor of the Symphony and dismissed the tort claim against it, is affirmed.
Concrete Busters of Louisiana, Inc.
Concrete Busters and their secretary/treasurer, "Tiger" Roussell participated in the renovation to the old Orpheum Theater in late 1988 and 1989. Upon the basis of his personal knowledge in this regard, Mr. Roussell submitted an affidavit in support of Concrete Busters motion for summary judgment.
According to his affidavit, Concrete Busters's pro bono efforts, which were completed prior to the theater's grand opening on March 8, 1989, involved the removal of an interior wall in the ground floor lobby, the removal of seats in the orchestra, and the enlargement of the lobby. In the summer of 1989, Concrete Busters performed, under a contract, certain exterior work on the building. Mr. Roussell testified that none of their efforts included renovation to the elevator; that none of their efforts included the use of the elevator; and that Concrete Busters had no presence at the site on the day of the accident. No evidence contradicts Mr. Roussell's recitation of those facts.
Since there is no issue of material fact and no legal duty imposed on Concrete Busters to the plaintiff under these facts, *1102 summary judgment was properly granted. Accordingly, the decision of the trial court, which rendered judgment in favor of Concrete Busters and dismissed plaintiff's claims against this defendant, is affirmed.
The Mathes Group:
Likewise, the Mathes Group participated in the renovation to the old Orpheum Theater in late 1988 and 1989. This architectural corporation is not alleged to have participated in any respect with the staging of the various productions scheduled in the theater, to which the plaintiff was assigned. Furthermore, the limited restoration undertaken at the time in question did not include the elevator. Although a representative of the Mathes Group agreed to contact an elevator consultant as part of an evaluation of future projects, the contact was indisputably made, an inspection was undertaken by the consultant, and a report concerning the inspection was submitted to the Symphony. Whatever duty was undertaken voluntarily by the Mathes Group with regard to the elevator was fulfilled.
In addition, in June of 1989, subsequent to the recommendation by the consultant and before the accident occurred, an employee of the Symphony took action to assure the safety of the elevator. Jeff B. Montalbano, the Symphony engineer, arranged to resume the lapsed contract with an elevator maintenance company and to obtain a city permit for the operation of the elevator. Assuming that the Mathes Group was ever responsible for the renovation to or replacement of the elevator, these actions on behalf of the Symphony certainly suggest no continuing responsibility by the Mathes Group at the time of the accident.
The material facts are not disputed. The plaintiff/Roberts was not employed by or supervised by the Mathes Group, the architectural firm charged with the design of renovations to the Orpheum Theater. In fact, Roberts did not work on the renovation project, and the limited renovations undertaken at the time did not include the elevator or elevator shaft where the injury occurred. Therefore, the extent of the Mathes Group's role in the project is not related to the plaintiff's injuries and does not constitute a material fact still at issue.
Since the Mathes Group has made and supported its motion for summary judgment, Article 967 of the Code of Civil Procedure will not permit Roberts to rely on mere allegations. To oppose the motion for summary judgment, Roberts was required to set forth receivable evidence regarding specific facts which show the existence of a genuine issue for trial. Osborne v. Vulcan Foundry, Inc., 577 So.2d 318, 323-24 (La.App. 4th Cir.1991). The possibility that he might raise a factual issue at trial should not defeat a summary judgment.[3]Efferson v. Link Belt Corp., 476 So.2d 528, 531 (La.App. 1st Cir.1985), (citing Atkinson v. Allstate Ins. Co., 361 So.2d 32 (La.App. 3d Cir.1978)). Accordingly, the Mathes Group was entitled to summary judgment as a matter of law.

CONCLUSION:
From the appeal of the plaintiff/Roberts, we affirm the summary judgments rendered in favor of the New Orleans Philharmonic Symphony Society and Concrete Busters of New Orleans, Inc., and we reverse that judgment in favor of the Orpheum Corporation. Having granted certiorari on the application of the Mathes Group, we reverse the trial court's denial of its motion for summary judgment and dismiss the suit against it. The matter is remanded to the trial court for further proceedings in accordance with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] This modification was recommended to afford a degree of safety for elevator repairmen who might work on top of the car inside the elevator hoistway. Even if effected, it would not have enhanced passenger safety.
[2] Furthermore, it should be noted that the "dual capacity doctrine" as applied to the employer was specifically rejected in the 1989 legislative session. By amendment, effective January 1, 1990, La.Rev.Stat.Ann. § 23:1032A(b) was added to provide:

This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
[3] Plaintiff apparently theorized that the elevator car had been moved negligently from the first floor landing by inmates from Parish Prison, who assisted with various projects at the Symphony. The only evidence indicated that the Symphony engineer arranged for their services and supervised their work. Plaintiff has provided no specific facts to link the inmates to the Mathes Group.