646 So.2d 905 (1994)
Joseph STELLY and Patsy Stelly
v.
OVERHEAD DOOR COMPANY OF BATON ROUGE, et al.
No. 94-C-0569.
Supreme Court of Louisiana.
December 8, 1994.
Dissenting Opinion December 12, 1994.
Rehearing Denied February 2, 1995.
*907 Patrick C. Morrow, Sr., James S. Gates, Opelousas, for applicant.
Graham N. Smith, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, *908 Cyd Sheree Page, Voorhies & Labbe, Lafayette, Charles A. Schutte, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, H. Douglas Hunter, Guglielmo, Lopez, Tuttle, Hunter & Jarrell, Opelousas, for respondent.
Lawrence S. Kullman, New Orleans, for Louisiana Trial Lawyers Ass'n, amicus curiae.
Dissenting Opinion of Chief Justice Calogero December 12, 1994.
FELICIA TONEY WILLIAMS, Judge Pro Tem.[1]
The issue in this tort action is whether an employee injured at work by a defective condition of the building is prohibited by LSA-R.S. 23:1032[2] from maintaining an unintentional tort action against his employer when the employer contractually assumed the building owner's liability for vices and defects of the premises. The trial court granted the employer's motion for summary judgment based upon LSA-R.S. 23:1032, which provides that an employer is statutorily immune from unintentional tort actions brought by its employees. The court of appeal affirmed. For the reasons which follow, we reverse.

I.
Plaintiff, Joseph Stelly ("Stelly"), was employed as a mechanic by United Parcel Service ("UPS") at its Opelousas Service Center. The building housing the service center was owned by Elvin Ortego ("Ortego") and leased to UPS. By the terms of the lease agreement, UPS assumed all liability for the condition of the leased premises.[3]
On December 16, 1987, Stelly was injured while in the course and scope of his employment when he attempted to manually raise an overhead door.[4] He filed a claim for worker's compensation benefits against UPS, and its worker's compensation insurer, Liberty Mutual Insurance Company ("Liberty Mutual"). He and his wife also filed this tort suit against Ortego, Overhead Door Company of Baton Rouge, Inc. and Overhead Door Corporation. Even though Stelly was receiving worker's compensation benefits, the Stellys amended their tort suit to add as defendants UPS and Overhead Door Company of Acadiana.[5] They based their tort claims *909 against UPS upon its contractual assumption of Ortego's liability for any defective condition of the building.
In response to the Stellys' tort suit, UPS filed an exception of no cause of action and of no right of action and, alternatively, a motion for summary judgment. UPS contended that, because Stelly was its employee, the Stelly's were precluded from suing it in tort for a work-related accident. It claimed that a provision of the Worker's Compensation Act, LSA-R.S. 23:1032, shields an employer from any tort action instituted by its employee, except for those based on an intentional tort. The Stellys maintained, however, that because UPS contractually assumed through the terms of its lease agreement, any and all liability of the building owner for any defects in the building, the liability UPS owes its employees extends beyond the statutory limitations of LSA-R.S. 23:1032.
Based upon LSA-R.S. 23:1032, the trial court granted UPS's motion for summary judgment. The Stellys appealed. The court of appeal affirmed the judgment and the dismissal of the Stellys' action against UPS, observing that "Louisiana courts have consistently refused to recognize the tort liability of employers under any dual capacity theory or doctrine." Stelly v. Overhead Door Co., 93-278 (La.App. 3 Cir. 2/2/94); 631 So.2d 698, 700. The court of appeal also concluded that the dual capacity doctrine, which the Stellys were attempting to apply, "was specifically and categorically rejected during the 1989 legislative session," by Act 454 of 1989 amending LSA-R.S. 23:1032, 631 So.2d at 702. It specifically disallows any claims by an employee against an employer under any dual capacity doctrine.[6] Therefore, although Stelly was injured before the effective date of the act, the court of appeal cited St. Paul Fire & Marine Ins. Co. v. E.R. Smith, 609 So.2d 809 (La.1992), and opined that, because the jurisprudence was consistent in this area prior to enactment of Act 454 of 1989, the act can and should be applied retroactively as interpretive legislation. 631 So.2d at 702.
On the Stellys' application, we granted certiorari[7] to determine whether Act 454 of 1989 is interpretative legislation which applies retroactively to the facts of this case and, if not, whether the limitative effects of the pre-amendment version of LSA-R.S. 23:1032 can be interpreted to shield an employer that contractually assumes the liability of an otherwise liable third party, from an unintentional tort action by its injured employee.

II.
When interpreting provisions of the Worker's Compensation Act, the history and policy provisions of the worker's compensation movement must be taken into account. Roberts v. Sewerage and Water Bd. of New Orleans, 92-2048 (La. 3/21/94); 634 So.2d 341, citing 1 W. Malone & H. Johnson, Worker's Compensation, § 35 (13 Louisiana Civil Law Treatise 2d ed. 1980) (hereafter, "Malone & Johnson"). In the early decades of this century, the dominant purpose of the movement to adopt compensation laws was not to abrogate existing tort remedies that afforded protection to workers, but to provide social insurance to compensate victims of industrial accidents. Id. See Boggs v. Blue Diamond Coal Co., 590 F.2d 655 (6th Cir.1979), writ den., 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979). Worker's Compensation laws were adopted as a compromise between two contending forceslabor, which generally favored reform, and employers, who generally opposed it. Roberts v. Sewerage and Water Bd. of New Orleans, 634 So.2d at 345. In the compromise, employees exchanged a set of common law remedies of dubious value for modest workers' compensation benefits designed to keep the injured employee and their family from destitution. Roberts v. Sewerage and Water Bd. of New Orleans, 634 So.2d at 345, citing Boggs v. Blue Diamond Coal Co., 590 F.2d at 659. The compromise obligates the employer to surrender its immunity against liability when *910 it was without fault and, in return, the employee loses his right to recover full damages from the employer for his injury and accepts instead a limited sum for compensation. 2 Malone & Johnson, § 361.
In Roberts v. Sewerage and Water Bd. of New Orleans, supra, this court recounted the basic principles our courts should utilize when interpreting the coverage and immunity provisions of our Worker's Compensation Act:
Because workers' compensation benefits have lagged far behind the expansion of liability and the curtailment of tort defenses, courts have responded by liberally construing the coverage provisions of workers' compensation acts while narrowly construing the immunity provisions. This approach has been justified as follows:
(T)here is no strong reason of compensation policy for destroying common law rights ... [and] every presumption should be on the side of preserving those rights, once basic compensation protection has been assured.... The injured employee has a right to be made wholenot just partly whole.... [A]ll the reasons for making the wrong-doer bear the costs of his wrongdoings still apply, including the moral rightness of this result as well as the salutary effect it tends to have as an incentive to careful conduct and safe work practices.

Boggs, 590 F.2d at 660 (quoting 2A Larson, The Law of Workmen's Compensation § 72.50 at 14-95 (1976)). In light of this basic history and policy, we agree with the foregoing authorities that every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicitly statutory language limiting or excluding such rights.
634 So.2d at 346. (emphasis added)
We must, therefore, approach the issue presented in this case by liberally construing the coverage provisions of the Worker's Compensation Act, while narrowly construing the immunity provisions.

III.
Louisiana's dual capacity theory or doctrine pertains to employers with multiple relationships, connections or involvement to the employee's injury and/or the cause of the injury, which ordinarily would result in liability being imposed upon the employer by operation of law in addition to the provisions of the Worker's Compensation Act. The dual capacity doctrine limits the injured employee's recovery to worker's compensation benefits, precluding the pursuit of their tort claims against their employer. For example, Deagracias v. Chandler, 551 So.2d 25 (La. App. 4th Cir.1989) [the employee attempted to sue his employer in products liability, when he was injured in the course and scope of his employment while using a backhoe bucket manufactured by the employer; the tort suit was rejected based upon the employment status of the claimant]; White v. Naquin, 500 So.2d 436 (La.App. 1st Cir.1986) [the tort suit of a school board employee, injured during the course and scope of employment, against the school board as custodian of the minor student who caused the injury, was rejected based upon the employment status of the claimant]; Wright v. Moore, 380 So.2d 172 (La.App. 1st Cir.1979), writ. den., 382 So.2d 164 (1980) [the employee of the state, injured during the course and scope of employment in a state owned automobile, driven by a state employee on a state roadway, was prohibited from maintaining a tort suit against the state for it being the custodian of the state's roads and highways]. See also 2 W. Malone & H. Johnson, Worker's Compensation, § 386, at 257 (14 Louisiana Civil Law Treatise 3d ed. 1994) (hereafter, "Malone & Johnson 3d ed."). But see Ducote v. Albert, 521 So.2d 399 (La.1988) [this court employed a common law, hybrid form of the dual capacity doctrine to hold a company physician liable for breach of the duty he owed his patient as a medical professional].
Thus, the Third Circuit's observation that "Louisiana courts have consistently refused to recognize the tort liability of employers under any dual capacity theory or doctrine," refers to those situations where the law would impose liability on an employer *911 for it being both the employer and having some other status, such as when the employer is also the owner of a defective building which caused the injury, the owner of the dog which caused the injury, the custodian of the child who caused the injury, the manufacturer of the product that caused the injury, etc. See Stelly v. Overhead Door Co., 631 So.2d at 700, and Knoll, J. dissenting, 631 So.2d at 702. The dual capacity doctrine, however, has never encompassed contractually assumed liability. It has consistently been limited to situations involving liability imposed by law due to a legal capacity or status in addition to that of employer. Stelly v. Overhead Door Co., Knoll, J. dissenting, 631 So.2d at 702.
Therefore, application of Louisiana's traditional dual capacity doctrine to the facts of this case would not preclude the Stelly's tort suit against UPS.

IV.
UPS contends that LSA-R.S. 23:1032 precludes the Stellys' tort action regardless of whether liability is statutorily or contractually based. It argues that the legislature amended LSA-R.S. 23:1032 to specifically include as a part of the exclusive remedy limitation, any unintentional tort claim brought by the employee against an employer based on the dual capacity doctrine.
At the time of Stelly's accident, LSA-R.S. 23:1032 provided in pertinent part as follows:
The rights and remedies herein granted to an employee or his dependent on account of any injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease.
By Act 454 of 1989, effective January 1, 1990, the legislature amended this statute to exclude all claims by an employee, including claims under any dual capacity theory or doctrine. As amended, the pertinent portions of LSA-R.S. 23:1032 provide:
A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine. (emphasis added)
LSA-R.S. 1:2 sets forth a general rule of statutory construction that, "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated." LSA-R.S. 1:2 is generally construed as being co-extensive with LSA-C.C. art. 6, which provides that absent legislative expression, procedural and interpretive laws apply both prospectively and retrospectively, but substantive laws apply prospectively only. Rousselle v. Plaquemines Parish School Bd., 93-1916 (La. 2/28/94); 633 So.2d 1235, 1244.
When determining whether a statute should apply retrospectively, courts are initially required to ascertain the legislature's intent regarding the retrospective or prospective application of the statute. See St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (1992). However, as the legislature did not express that it intended for Act 454 of 1989 to have retrospective application, this court must classify the statute as either substantive, procedural or interpretive legislation. Rousselle v. Plaquemines Parish School Bd., supra, citing St. Paul Fire & Marine, supra, and Cole v. Celotex Corp., 599 So.2d 1058 (La.1992).
A substantive law creates, confers or destroys rights, causes of action or legal duties. A procedural law prescribes methods for enforcing substantive laws, and *912 relates to the form of the proceeding or the operation of the laws. An interpretive law merely establishes the meaning that the existing law had from the time of its enactment. St. Paul Fire & Marine, supra. 609 So.2d at 817, Ardoin v. Hartford Accident and Indem. Co., Inc., 360 So.2d 1331 (La.1978).
Applying these precepts to Act 454 of 1989, the legislation is not interpretive or procedural as it does not establish the meaning of LSA-R.S. 23:1032, nor does it prescribe methods for enforcing the substantive rights and obligations already set forth in the statute.[8] Rather, the enactment is a substantive law. It destroys rights or causes of actions by specifically barring any tort action brought under a dual capacity theory. Therefore, as the enactment lacks an expression of legislative intent to the contrary, the substantive statute should apply prospectively only. This conclusion is bolstered by the consideration that no law can be applied retroactively so as to divest a party of a vested right. See Cole v. Celotex Corp., supra. Hence, if the date the Stellys' cause of action accrued is not considered, their due process rights under both the federal and state constitutions would be violated. See St. Paul Fire & Marine Ins. Co., supra.
The Stellys' cause of action accrued on the date of Stelly's accident, December 17, 1987. Act 454 of 1989, however, did not become effective until January 1, 1990. Act 454 of 1989 can not be applied retroactively to this case because it would effectively divest the Stellys of their vested rights and such a result can not be allowed. Cf. Putzey's v. Schreiber, 576 So.2d 563 (La.App. 4th 1991), writ den., 578 So.2d 932 (La.1991). Therefore, the pre-amendment version of LSA-R.S. 23:1032 governs the Stellys' tort action against UPS.[9]

V.
Although the rights of an injured employee to recover against his employer is generally limited to worker's compensation benefits, the employee maintains his right to sue a negligent or strictly liable third party in tort. See Gauthier v. O'Brien, 618 So.2d 825 (La.1993). LSA-R.S. 23:1101 codifies this principle:

When an injury or compensable sickness or disease for which compensation is payable under this Chapter has occurred under circumstances creating in some person (in this Section referred to as third person) other than those persons against whom the said employee's rights and remedies are limited in Section 1032 of this Chapter, a legal liability to pay damages in respect thereto, the aforesaid employee or his dependents may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the said employee or his dependents, relations, or personal representatives against such third person, nor be regarded as establishing a measure of damages for the claim; and such employee or his dependents, relations, or personal representatives may obtain damages from or proceed at law against such third person to recover damages for the injury, compensable sickness or disease.
Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover *913 any amount which he has paid or become obligated to pay as compensation to such employee or his dependents. (emphasis added)
LSA-R.S. 23:1101 reaffirms the concept that our Worker's Compensation Act seeks to insure the tortfeasor is held responsible for the damages he or she causes, and is not permitted to escape liability merely because the victim may be entitled to assert a claim for compensation from the employer. 2 Malone & Johnson, § 367, at 169. It also reaffirms the principle that every presumption of the Worker's Compensation Act should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer. Roberts v. Sewerage and Water Bd. of New Orleans, 634 So.2d at 346.
Normally, the owner of a building remains liable for the condition of the building, and for any resulting injuries arising therefrom, even when it is leased. See LSA-C.C. arts. 660, 2317, 2322 and 2695. See also Tassin v. Slidell Mini-Storage, Inc., 396 So.2d 1261 (La.1981). However, there is an exception to this rule of law. A lessee may contractually assume the owner's responsibilities for the condition of the leased premises, including liability for any injuries resulting from defects in the premises pursuant to LSA-R.S. 9:3231.[10]
The Stellys insist that the lease agreement between Ortego and UPS contemplates UPS's broad assumption of any possible liability claims that could be asserted against Ortego. They suggest that any liability on the part of the landowner, pursuant to the strict liability theories of LSA-C.C. arts. 660, 2317 and 2322, became the responsibility of UPS under the lease. They also contend UPS is obligated to provide complete protection to the owner from liability, and the lease agreement does not limit the classes of possible claimants to whom UPS assumes liability. According to the Stellys, the language used in the lease agreement reveals that UPS did not intend to restrict or exempt itself from liability for injuries caused to its own employees. We agree.
The lease agreement between Ortego and UPS was confected pursuant to LSA-R.S. 9:3221. Under the terms of the lease, UPS
"expressly relieves [the] landowner of any and all liability for injuries or damages caused by any vice or defect of the leased premises to any occupant or to anyone in or on the leased premises ... [and] expressly assumes all such liability agreeing to indemnify lessor and hold the lessor harmless for any damages or injuries to any person or persons whomever ... arising out of the use or condition of the leased premises." (emphasis added)
The lease agreement, which provides for mutual obligations, is the law between Ortego and UPS. It also has the effect of law even as to third persons who are not parties to the agreement. See Davis v. Copeland Enterprises, 390 So.2d 891 (La.1980). There are no limitations in LSA-R.S. 9:3221 which would limit its application to situations where the lessee, who assumes responsibility for the condition of the leased premises and for injuries caused by defects therein, is the employer of the injured tort victim. See Pellegrin v. Ditto, 625 So.2d 1356 (La.App. 1st Cir.1993).
Parties are free to contract for any lawful cause. LSA-C.C. art. 1971. Although employers are granted immunity from the tort claims of their employees, and this immunity extends to third party claims as well as those brought by an employee, there is no statutory prohibition against a third person and an employer contractually agreeing that the employer will hold the third person harmless. Berninger v. Georgia-Pacific Corp., 582 So.2d 266 (La.App. 1st Cir.1991), citing 2 Malone and Johnson, § 374 at 223. Just as the policy behind statutory immunity does not prevent employers from contractually waiving their immunity from contribution, we find no existing policy considerations *914 which prohibit UPS, the employer, from contractually waiving its statutory immunity from tort suits such as this one filed by the Stellys.
Under the terms of the lease agreement, UPS expressly assumed responsibility for the condition of the leased premises and for any and all liability resulting from defects in the leased premises. Yet, UPS seeks to benefit from the statutory immunity in LSA-R.S. 23:1032. If such a result was permitted, Ortego, the building owner, would in effect be allowed to benefit indirectly from the statutory immunity of LSA-R.S. 23:1032. Thus, the building owner would enjoy the rights and benefits of ownership and, at the same time, have the ability to contract away the all the legal obligations and duties owed as a result of that ownership, without anyone acquiring the full range of legal obligations and duties in return.[11] The result would deny the Stellys full recovery for their injuries despite UPS's contractual assumption of liability for all injuries to any person. Neither of these results was permissible under the pre-amendment version of LSA-R.S. 23:1032.
Louisiana law designates that building owners are strictly liable for the damages and injuries caused by their buildings. See LSA-C.C. arts. 660, 2317 and 2322. Consequently, as he is the owner of the service center's building, Ortego is answerable for its ruin unless another has assumed his liability. A contract between Ortego and a person or entity which agrees to assume his owner's liability can not eliminate these codal rights to recover tort damages against the building owner or someone in his stead.
Thus, through the confection of their lease, Ortego and UPS could not and did not create a void in the law. When UPS contractually assumed Ortego's owner's liability, it included the legal duties and liability Ortego owed to the Stellys for the condition of the building. Therefore, the limitative effects of the pre-1990 version of LSA-R.S. 23:1032 do not shield Stelly's employer, UPS, from the strict liability it contractually assumed from the building owner. But see Roberts v. Orpheum Corp., 610 So.2d 1097 (La.App. 4th Cir.1992), writ den., 616 So.2d 682 (La.1993).
Reviewing UPS's motion for summary judgment in light of the foregoing legal precepts, we find the trial court erred as a matter of law in granting the motion. Based upon the provisions of LSA-R.S. 23:1032, LSA-R.S. 23:1101 and the terms of the lease agreement, the motion should have been denied.

DECREE
For the reasons assigned, the judgments of the trial court and court of appeal are reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. All costs incurred in connection with the motion for summary judgment are assessed to UPS. Assessment of all other costs shall await the final outcome of this litigation.
REVERSED AND REMANDED.
LEMMON, J., concurs.
HALL, J., dissents.
CALOGERO, C.J., dissents and will assign reasons.
CALOGERO, Chief Justice, dissenting.
I believe that a fair reading of the immunity accorded employers by LSA-R.S. 23:1032 leads to the conclusion that it bars any claim for compensatory damages under LSA-C.C. Articles 660, 2317, and 2322 brought by an employee against an employer. See Billiot v. B.P. Oil, 645 So.2d 604 (La.1994). The fact that the Legislature has removed from the plaintiff his strict liability claim against the landlord, Ortego, should not operate to deprive UPS of its statutory immunity. LSA-R.S. 9:3221, the statute allowing contractual indemnification by a lessee of his lessor's strict liability for defects of the leased premises, is a substantive provision of law which has been triggered by the underlying contractual relationship between the lessor, Ortego, *915 and the lessee, UPS. That this statute fortuitously (for the defendants) removes Ortego from the list of third party defendants available to the plaintiff does not lead to the conclusion that UPS, as indemnitor, is now deprived of the protections of Louisiana's worker's compensation scheme. The majority's equation, i.e. immunity plus indemnity equals liability, simply does not add up. Therefore, I respectfully dissent.
NOTES
[1] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994. Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis.

Pursuant to Rule IV, Part 2, § 3, Marcus, J., is not on the panel which heard and decided this case.
[2] See Section IV, infra.
[3] Paragraph 11 of the Lease agreement provides as follows:

(a) Landlord will not be responsible for any damage to any person whomsoever, even those arising from defects which Landlord is required by his lease to repair, except in the case of Landlord's positive neglect or failure to take action toward the remedying of such defects within a reasonable time after receipt of written notice of such defects and of the damage caused. Should Tenant fail promptly to notify Landlord in writing of any such defects, Tenant will become responsible for any damage resulting to Landlord or others.
(b) .... Pursuant to the provisions of Louisiana R.S. 9:3221, Tenant agrees to hold Landlord harmless from any responsibility whatsoever for damages to any person whomsoever or to any property of the Tenant or other arising from the condition, upkeep and maintenance of the leased premises, and Tenant expressly relieves Landlord of any and all liability for injuries or damages caused by any vice or defect of the leased premises to any occupant or to anyone in or on the premises or in or on any adjacent streets, sidewalks, curbs, parking areas, or other walks or areas adjacent to the leased premises. Tenant expressly assumes all such liability agreeing to indemnify Landlord and hold Landlord harmless from any liability whatsoever for any damages or injuries to any person or persons whomsoever or to the property of any person or persons whomsoever arising out of the occupancy, use, condition or state of repair of the leased premises, except as expressly set forth above.
(c) Tenant will indemnify Landlord and hold Landlord harmless from all loss and expense of any kind which Landlord may sustain or which may be asserted against Landlord as the result of injuries to persons or property resulting or alleged to result from any fault or negligence of Tenant or of Tenant's agents or employees, or from the ownership, use, occupancy or maintenance of the leased premises.
[4] The service center was equipped with several overhead doors which operated in a fashion similar to some residential garage doors. Each overhead door had numerous wheels operating within parallel runners on each side, and were operated by a chain that a person pulled to open and close the door.
[5] Ortego was sued as the owner of the allegedly defective premises where the accident occurred, and Overhead Door Company was sued as the manufacturer of the overhead door. Overhead Door Company of Acadiana was sued as the service contractor of the overhead door. Overhead Door of Baton Rouge was sued as a service contractor of the overhead doors, but was later dismissed from this suit.
[6] The effective date of Act 454 of 1989 was January 1, 1990.
[7] 94-0569 (La. 5/6/94); 637 So.2d 1039.
[8] UPS argues that LSA-R.S. 23:1032 was amended by the legislature to eliminate any confusion regarding the existence of the dual capacity theory. Since Ducote v. Albert, 521 So.2d 399 (La. 1988), Louisiana courts have consistently rejected the dual capacity doctrine. See, e.g., Roberts v. Orpheum Corp., 610 So.2d 1097 (La.App. 4 Cir.1992), writ den., 616 So.2d 682 (La.1993); Deagracias v. Chandler, 551 So.2d 25 (La.App. 4th Cir.1989); White v. Naquin, 500 So.2d 436 (La.App. 1st Cir.1986); Courtney v. BASF Wyandotte Corp., 385 So.2d 391 (La.App. 1st Cir.), writ. den., 386 So.2d 359 (1980); Hebert v. Gulf States Utilities Co., 369 So.2d 1104 (La.App. 1st Cir.1979), writ den., 369 So.2d 466 (La.1979); Atchison v. Archer-Daniels-Midland Co., 360 So.2d 599 (La.App. 4th Cir.), writ. den., 362 So.2d 1389 (La.1978). Thus, there was no confusion which necessitated a clarification of the law.
[9] Since the Stellys' action is governed by the pre-1990 version of LSA-R.S. 23:1032, we decline to address the impact of the post-amendment version on this action and/or whether the statute refers to Louisiana's traditional dual capacity doctrine or a more expansive version of the doctrine.
[10] LSA-R.S. 9:3221 states that the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
[11] Of course, under LSA-R.S. 9:3221, the owner of the leased premises would remain liable for any defect therein if plaintiffs prove the owner knew or should have known of the defect, or had received notice thereof and had failed to remedy it within a reasonable time.