663 So.2d 222 (1995)
Edward MITCHELL, Plaintiff-Appellee,
v.
DIXIE ROOFING & SHEET METAL CO., INC., Defendant-Appellant.
No. 95-288.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*224 Donald Ray Brown, for Plaintiff-Appellee Edward Mitchell.
Stephen E. Everett, for Defendant-Appellant Dixie Roofing & Sheet Metal Co. Inc.
Before DOUCET, C.J., and YELVERTON and PETERS, JJ.
YELVERTON, Judge.
This is an appeal in a worker's compensation case by Dixie Roofing Company, Inc.[*], from a judgment awarding Edward Mitchell supplemental earnings benefits (SEBs). Dixie was also ordered to pay all outstanding medical expenses together with a 12% penalty and interest. Additionally, Dixie was cast for attorney's fees for its failure to pay the medical bills. Dixie claims all these awards were in error.
Mitchell worked for Dixie as a roofing foreman. On March 7, 1989, Mitchell and the rest of the crew were working on a roof in Ville Platte. Mitchell fell off the roof about fifteen feet and hit the concrete. He suffered a depressed left frontal skull fracture, a fracture to his right wrist, and a dislocation of the carpal bone in the wrist. Surgery was successfully performed restoring the contour of the skull. At the same time, the right wrist was manipulated and pinned.
Dixie had no worker's compensation insurance. It paid $275 a week to Mitchell in benefits until June 26, 1989, at which time Mitchell attempted to return to work. At the time Mitchell first returned to work, he operated a gravel puller from the ground. A couple of days later, he went on the roof and operated a roof cutter and a spud machine, and worked with a tar mop. His wrist began to swell. Mitchell had worked a little over a week when he began to feel dizzy and had to be helped off the roof. He never returned to work for Dixie but began working for Jefferson Roofing in January 1990.
The trial court found that Mitchell was temporarily partially disabled and entitled to receive SEBs from June 26, 1989, to the date of discharge by his treating neurosurgeon on December 29, 1989. The trial court further found that Dixie's failure to pay the stipulated medical expenses was without probable cause and awarded $3,500 in attorney's fees in addition to penalties and interest in the amount of 12%. Dixie was the only party to appeal this judgment.

SUPPLEMENTAL EARNINGS BENEFITS
Dixie claims that the trial court erred in awarding SEBs to Mitchell because Mitchell failed to prove that he experienced more than a 10% wage loss and that the wage loss was a result of the accident. La.R.S. 23:1221(3). Dixie does not dispute that Mitchell has a physical disability to his right wrist that might require further medical attention but argues that there was no change in his physical condition from July of 1989 to *225 the time he got a job with Jefferson earning the same rate of pay he had earned at Dixie. In sum Dixie claims that Mitchell could have been earning wages equal to 90% of his wages during this interim period.
In a worker's compensation case, the appellate court's review is governed by the manifest error or clearly wrong standard. Therefore, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Smith v. Louisiana Dept. Of Corrections, 93-1305 (La. 2/28/94), 633 So.2d 129.
The injured employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn 90% or more of the wages he was earning at the time of injury. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that the worker's compensation law is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
At the time of his accident, Mitchell was earning $12 an hour. He had a seventh-grade education and had worked for Dixie for fifteen years. Dr. Babson Fresh, Mitchell's treating neurosurgeon for his head injury, released him to return to work at Mitchell's request in June 1989. Dr. Fresh did not want Mitchell working off the ground. Dr. Walter Foster, Mitchell's treating orthopedic surgeon for his hand injury, had released Mitchell to return to work in late April 1989 subject to several restrictions. According to Dr. Foster, Mitchell's responsibilities should only entail driving vehicles, job supervision and rolling felt, using one hand to hold the knife and the foot to roll. There was to be no heavy lifting or strain of Mitchell's injured right arm. Mitchell was right-handed.
Mitchell returned to work on June 26, 1989. However, after a couple of days, he worked on the roof, attempting several parts of the job he had done before his injury and began to experience swelling in his right hand. A little over a week after he returned to work, he had a dizzy spell and left work early. That was his last day on that job. Several co-workers verified this testimony. Mitchell returned to see Dr. Fresh on October 18, 1989, complaining of headaches and neck pain. Dr. Fresh stated that he had been concerned about Mitchell working off the ground only three and a half months after his injury but released him to go back to work at his request because his skull was healing. Dr. Fresh stated that ideally he should have had another four to six weeks at a minimum before he went back to work. Dr. Fresh finally discharged Mitchell to return to work on December 20, 1989.
Dr. Foster was also not surprised that Mitchell could not perform the normal duties of a roofer when he returned to work. The doctor attributed this to his hand problems in addition to his neurological problems.
Based on his own testimony about his experiences once he attempted to return to work and the doctors' testimony about his actual abilities, there is no error in the finding that Mitchell proved by a preponderance of the evidence that he was unable to perform his previous job as a roofing foreman. A worker's compensation claimant seeking supplemental benefits does not have to accept employment that involves an appreciable and significant risk to his well-being. Smith, 633 So.2d at 133.
Once Mitchell established that he was unable to earn wages equal to 90% of his pre-injury wages, the burden shifted to Dixie to prove that Mitchell was physically able to perform a certain job and that job was offered to him or that the job was available to Mitchell in his or Dixie's community or reasonable geographic region. Daigle, 545 So.2d 1005.
Dixie offered no evidence of employment offered to or available to Mitchell during the period before he went to work with Jefferson. Rusty Bell, the owner of Dixie, testified that although he was aware Mitchell's hand had been swelling, he had no idea why Mitchell left Dixie. Bell admitted that Mitchell contacted him about a week later informing him that he was having problems and could not come back to work. Bell claims he saw Mitchell working so did not think it necessary to call him. However, no substantive testimony was offered by Dixie regarding *226 Mitchell's employment and wages from these other jobs in the interim. All that was offered were bare comments from a couple of workers who testified that they saw Mitchell working.
Dixie did not prove by a preponderance of the evidence that Mitchell was physically able to perform roofing jobs. The trial court was correct in finding that Mitchell was entitled to SEBs.

ATTORNEY'S FEES
Dixie claims the trial court erred in awarding attorney's fees pursuant to La.R.S. 23:1201.2 for its failure to pay the medical expenses after sixty days written notice. Dixie claims that this award is penal and should not be imposed under the circumstances of this case.
Dixie does not deny that the medical expenses incurred by Mitchell were related to his fall at work. Its explanation is that it has made arrangements with Mitchell's health care providers for the payment of the bills on a monthly basis. It acknowledges that the payments were irregular but that Mitchell has himself not been bothered by the health care providers for payment of the bills. Bell testified that the reason the company was not paying the bills was because it was in a financial bind because a $90,000 debt owed to it under a job contract had not been paid.
We agree with Dixie's contention that under the facts of this case it was error for the trial court to award attorney's fees to Mitchell for its failure to pay medical expenses, but for the following reasons. In this case Dixie does not deny that it owes payment for the medical benefits incurred. However, Mitchell had never been denied any medical care for which these expenses were incurred. The only parties in this case who have been aggrieved by Dixie's failure to timely pay the medical bills are the health care providers. La.R.S. 23:1201.2 provides for attorney's fees for the "prosecution and collection" of such claims if the employer has acted arbitrarily, capriciously, or without probable cause. Mitchell has not had to collect money for the medical expenses because he has not had to pay for them. Mitchell testified that he has not been sued nor has he been harassed by the health care providers for Dixie's failure to pay the medical expenses. Awarding attorney's fees in this case does not help the injured worker, makes no contribution to the purpose of the worker's compensation law or the improvement of its administration, and does not serve the ends of justice. Accordingly, we find that the trial court erred in awarding $3,500 to Mitchell as attorney's fees for failure to pay the medical expenses.

PENALTY
Dixie also claims that the trial court erred in awarding a 12% penalty for Dixie's refusal to pay all outstanding medical bills. Dixie claims that the 12% penalty provided for in La.R.S. 23:1201 does not apply to the failure to timely pay medical benefits. Dixie claims it only applies to the failure to timely pay indemnity benefits.
This circuit and the first circuit have disagreed on the interpretation to be given La. R.S. 23:1201. In Dubois v. Diamond M Co., 559 So.2d 777 (La.App. 3 Cir.), writ denied, 563 So.2d 866 (La.1990), this court held that La.R.S. 23:1201 does not provide for penalties for failure to pay medical expenses. Previously, the first circuit in Hall v. McDonald Insulation, 537 So.2d 328 (La.App. 1 Cir.1988) had held that the 12% penalty applied to medical expenses. In Johnson v. Vinson Guard Service, Inc., 92-2187 (La. App. 1 Cir. 3/11/94), 636 So.2d 914, writ not considered, 94-1661 (La. 9/2/94), 642 So.2d 1280 the first circuit continued to follow the law as it expressed in Hall.
Mitchell cites Chelette v. American Guar. & Liability Ins., 480 So.2d 363 (La.App. 3 Cir.1985), for the position that this court has previously held that a 12% penalty may be assessed for failure to timely pay medical expenses. However, whether the penalty was assessable on failure to timely pay medical expenses was not at issue in that case. What was at issue was the test for determining whether a worker's compensation insurer reasonably controverted a claimant's entitlement to benefits precluding the imposition of penalties. A 12% penalty had been assessed *227 on both the failure to timely pay compensation benefits and medical expenses.
The issue of an assessment of a penalty on medical benefits was squarely before this court in Dubois, 559 So.2d 777. Therefore, we follow the law as enunciated in Dubois in examining the subsequent history of La.R.S. 23:1201.
La.R.S. 23:1201 was amended by Acts 1992, No. 1003, effective January 1, 1993 to provide for a penalty on any unpaid medical benefits. Previously the statute had provided only for a penalty on an unpaid installment of compensation. Is it retroactive? La.R.S. 1:2 sets forth a general rule of statutory construction that, "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated." La.R.S. 1:2 is generally construed as being co-extensive with La. Civ.Code art. 6, which provides that absent legislative expression, procedural and interpretive laws apply both prospectively and retrospectively, but substantive laws apply prospectively only. Stelly v. Overhead Door Co. Of B.R., 94-0569 (La. 12/8/94), 646 So.2d 905, 911.
When determining whether a statute should apply retrospectively, courts are initially required to ascertain the legislature's intent regarding the retrospective or prospective application of the statute. Stelly, 646 So.2d 905. The legislature's selection of a delayed effective date evidences some, albeit inconclusive, intent of prospective application. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992). In the present case the effective date of Act 1003 of 1992 was January 1, 1993.
Absent a conclusive expression of legislative intent, we must proceed to classify the amendment pursuant to La.Civ.Code art. 6 as either substantive, procedural or interpretative. A substantive law creates, confers or destroys rights, causes of action or legal duties. A procedural law prescribes methods for enforcing substantive laws, and relates to the form of the proceeding or the operation of the laws. An interpretive law merely establishes the meaning that the existing law had from the time of its enactment. Stelly, 646 So.2d 905.
Mitchell would like us to interpret the amendment as an interpretative one and apply it retroactively. However, we find that the amendment makes a substantive change in the law for the following reasons.
First, the amendment to La.R.S. 23:1201 was over two years after the conflicting decision by this court with the first circuit. See St. Paul Fire & Marine Ins. Co., 609 So.2d at 820. So, this was not a "prompt" legislative response to those cases.
Second, the statute is a penal statute and must be strictly construed. Polk v. Babineaux's Plumbing, Inc., 628 So.2d 71 (La. App. 3 Cir.1993). La.R.S. 23:1201.2 awarding attorney's fees refers to a "claim" while La.R.S. 23:1201 prior to the amendment referred only to an "installment of compensation." Obviously the legislature intended two different meanings when it removed penalties from La.R.S. 23:1201.2 in 1983 and inserted penalties into La.R.S. 23:1201 dealing with the payments of compensation. We find it was error for the trial judge to award a 12% penalty on unpaid medical expenses.
For these reasons the judgment of the trial court is reversed with respect to its award of penalties and attorney's fees on unpaid medical expenses. In all other respects, the judgment of the trial court is affirmed.
Costs of this appeal are assessed to Dixie Roofing & Sheet Metal Co., Inc.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[*] At the beginning of the trial on this matter it was agreed by the parties that the pleadings would be amended to reflect the correct name of the company as Dixie Roofing Company, Inc.