# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CW 09-426


**CLARENCE HENRY, ET AL.**

**VERSUS**

**SBA SHIPYARD, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

## ON REMAND FROM THE SUPREME COURT

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-55-98
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## EN BANC

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, and Sylvia R. Cooks, John D. Saunders, Oswald A. Decuir, Jimmie C. Peters, Marc T. Amy, Michael G. Sullivan, Elizabeth A. Pickett, Billy H. Ezell, J. David Painter, James T. Genovese, and Shannon J. Gremillion, Judges.

### WRIT GRANTED AND MADE PEREMPTORY.


**Cooks, J., dissents and assigns written reasons.**
**Saunders, J., dissents and assigns written reasons.**
**Gremillion, J., dissents and assigns written reasons.**

**Scott R. Bickford**
**Regina O. Matthews**
**Lawrence J. Centola, III**
**Martzell & Bickford**
**338 Lafayette St.**
**New Orleans, LA 70130**
**(504) 581-9065**
  **Counsel for Plaintiff-Respondent:**
  **Henry Wise**

**Darrell Keith Cherry**
**Deutsch, Kerrigan & Stiles**
**755 Magazine St.**
**New Orleans, LA 70130-3672**
**(504) 581-5141**
  **Counsel for Defendant-Applicant:**
  **Pulmosan Safety Equipment Co.**

**PICKETT, Judge.**

Pulmosan Safety Equipment Company (Pulmosan) seeks supervisory writs from the judgment of the trial court which denied Pulmosan's motion to dismiss on the grounds of abandonment.

## STATEMENT OF THE CASE

Eight plaintiffs filed suit alleging that they sustained injuries as a result of having been exposed to asbestos and silica while working at SBA Shipyard, Inc. Pulmosan was named as one of the numerous defendants. Several supplemental and amending petitions were filed, including the Sixth Supplemental and Amending Petition wherein Mississippi Valley Silica Company, Inc. (Mississippi Valley), was added as a defendant on December 4, 2002. On March 28, 2003, Mississippi Valley filed its answer to the suit. No further action was taken in this case until December 4, 2006, when Plaintiff propounded discovery to one of the defendants, U.S. Silica of Louisiana, Inc. (U.S. Silica ).

Before Pulmosan was served as a party in this case, its co-defendants, U.S. Silica and Mississippi Valley, filed motions to have plaintiffs' case dismissed for abandonment. After the trial court denied these motions, Pulmosan became involved in the lawsuit and also moved to have the plaintiffs' claims dismissed for abandonment. The trial court denied the motion, and Pulmosan sought review of that ruling. This court denied the application for supervisory writs in an unpublished writ disposition on June 2, 2009. On July 9, 2009, the supreme court remanded the case to this court for an en banc hearing. In its remand, the supreme court instructed this court to "address the apparent internal conflict in the circuit concerning whether Act 361 of 2007, which amended La.Code Civ.P. art. 561, can be applied retroactively."

1

# DISCUSSION

The abandonment of a civil action is governed by La.Code Civ.P. art. 561, which provides in pertinent part:

> A.(1)An action, except as provided in Subparagraph (2) of this Paragraph, is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years . . . .
>
> . . . .
>
> (2) If a party whose action is declared or claimed to be abandoned proves that the failure to take a step in the prosecution or defense in the trial court or the failure to take any step in the prosecution or disposition of an appeal was caused by or was a direct result of Hurricane Katrina or Rita, an action originally initiated by the filing of a pleading prior to August 26, 2005, which has not previously been abandoned in accordance with the provisions of Subparagraph (1) of this Paragraph, is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years . . . .
>
> . . . .
>
> (3) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The sheriff shall serve the order in the manner provided in Article 1314, and shall execute a return pursuant to Article 1292.
>
> . . . .
>
> (6) The provisions of Subparagraph (2) of this Paragraph shall become null and void on August 26, 2010.

Act 361 of 2007 added the language in subsections A(2) and A(6) to the code article regarding the extension of the time period before an action is deemed abandoned and the sunset date of that language. The amendment became effective on July 9, 2007. The question presented to this court is whether that language should be given retroactive effect to those cases in which the three-year period had not run

2

on August 26, 2005, but had tolled before the July 9, 2007 effective date of the amendment.

This court has addressed this question twice. In *Duplechian v. SBA Network Services, Inc.*, an unpublished opinion bearing docket number 07-1554 (La.App. 3 Cir. 5/7/2008)(Saunders, J., writing; Genovese, J., concurs in the result; Sullivan, J., concurs with written reasons.), this court found that Act 361 was procedural in nature and should be given retroactive effect. In *Duplechian*, the last step taken in the prosecution of the case was a deposition of the plaintiff on March 2, 2004. On May 1, 2007, the defendant filed a motion to dismiss the suit as abandoned. The trial court granted the motion and signed a judgment dismissing the suit with prejudice as abandoned on May 7, 2007. The plaintiff filed a motion to set aside the judgment on June 4, 2007, and the trial court signed a judgment dismissing the plaintiff's suit without prejudice on August 13, 2007. In his written concurrence, Judge Sullivan explained that he would not reach the issue of retroactivity:

> I concur in the result. However, my review of the facts of this case indicate that the amendment to La.Code Civ.P. art. 561 became effective on July 9, 2007, before the hearing to set aside the dismissal on July 16, 2007, the reasons for judgment signed on July 18, 2007, and the formal judgment of dismissal signed on August 13, 2007. Accordingly, I submit that the article, as amended, was applicable to this case and that the issue of retroactivity need not be addressed.

In *Morgan v. Louisiana Department of Public Safety and Corrections*, 08-750 (La.App. 3 Cir. 12/10/08), ___ So.2d ___, *rehearing granted and additional briefing ordered by the court on 2/4/09* (Painter, J., writing for a unanimous panel including Saunders and Ezell, JJ.), this court found that Act 361 was substantive and therefore could not be given retroactive effect. In *Morgan*, this court found that the last step in the prosecution of the case was on either March 31, 2003, when the plaintiff filed

3

an amending petition, or December 18, 2003, when the court issued a judgment transferring the case to another venue. Thus, the court found that at the latest, the suit was abandoned on December 18, 2006. On November 13, 2007, the defendants filed a motion for dismissal on the ground of abandonment, which the trial court granted. The opinion notes that abandonment is a species of prescription, and the abandonment period is self-executing. As such, the amendment to La.Code Civ.P. art. 561 did nothing to revive suits that had already been abandoned on July 7, 2007.

We find that these cases do provide conflicting answers to the question presented to us in this writ application.

The plaintiff, Henry Wise, has filed an opposition to the instant writ application arguing that the trial court properly denied Pulmosan's motion to dismiss for abandonment. Wise points out that the July 9, 2007 amendment to La.Code Civ.P. art. 561 extends the abandonment period from three to five years for those cases in which a plaintiff can prove that his failure to take steps in the prosecution of his claim was caused by Hurricane Katrina or Hurricane Rita. Because at the time when Wise propounded discovery to U.S. Silica on December 4, 2006, more than three years had passed since an answer was filed by Mississippi Valley on March 28, 2003, it appeared that the plaintiff's claim was abandoned pursuant to the three-year abandonment period set forth in La.Code Civ.P. art. 561(A)(1). However, Wise asserts that the five-year abandonment period set forth in La.Code Civ.P. art. 561(A)(2) is applicable to this case. In that regard, the plaintiff has presented evidence in the form of affidavits and live testimony demonstrating how Hurricane Katrina has had a negative impact on the usual operations of the law firm representing Wise. After having considered this evidence, the trial court concluded that the

4

hardship experienced by the firm and its employees was the exact type of situation which the legislature had envisioned when it amended Article 561. As such, the trial court found that the five-year abandonment provision applies to this case.

In its writ application, Pulmosan asserts that the trial court erred in retroactively applying the five-year abandonment period provided for in the 2007 amendment to La.Code Civ.P. art. 561(A)(2). Pulmosan points out that La.Civ.Code art. 6 permits retroactive application of a law if it is procedural or interpretive in nature, rather than substantive. However, Pulmosan maintains that even procedural or interpretive rights may not be retroactively applied if they effect a substantive change in the law or disturb vested rights. Pulmosan cites *Stelly v. Overhead Door Co. of Baton Rouge,* 94-0569, p. 7 (La. 12/8/94)*,* 646 So.2d 905, 912 (citation omitted), for the proposition that "no law can be applied retroactively so as to divest a party of a vested right." In the instant case, Pulmosan contends that Wise's failure to take a step in the prosecution of his case for more than three years created a vested right for Pulmosan to have Wise's claim dismissed for abandonment, because pursuant to La.Code Civ.P. art. 561(A)(3), abandonment occurs by operation of law. According to Pulmosan, because this vested right was acquired March 28, 2006, prior to the July 9, 2007 effective date for the amendment to the abandonment statute, the amendment cannot be retroactively applied to revive Plaintiff's claim. In support of this position, Pulmosan cites *Morgan*, ___ So.2d ___.

In response to Wise's assertion that the wording of La.Code Civ.P. art. 561(B) manifests the legislature's intent to provide a five-year abandonment period for cases that had not been abandoned as of August 26, 2005, Pulmosan argues that the legislature did not have the power to violate Pulmosan's constitutional due process

5

rights by retroactively applying the amendment and depriving Pulmosan of its already vested right of repose. Citing *Clark v. State Farm Mutual Automobile Insurance Co.*, 00-3010 (La. 5/15/01), 785 So.2d 779, Pulmosan contends that the right of repose flowing from abandonment is the same as that of prescription. According to Pulmosan, not only did the legislature lack the authority to divest Pulmosan of its substantive right of repose, but the legislature also did not expressly state that it intended to include already abandoned acts in the amendment.

While Pulmosan relies on this court's decision in the *Morgan* case to support its argument that the plaintiff's claim was abandoned prior to the effective date of the amendment to La.Code Civ.P. art. 561, Wise relies on this court's unpublished decision in *Duplechian*. In *Duplechian*, this court found that the only reasonable interpretation of La.Code Civ.P. art. 561(B) is that the legislature intended to extend the abandonment period to five years for cases which were filed before but not abandoned by August 26, 2005. This court noted that the abandonment statute is to be liberally construed in favor of maintaining the suit, and it found that the amendment to Article 561 should be retroactively applied because it is a procedural rule. The case was remanded to the trial court for an evidentiary hearing on the issue of whether Hurricane Rita affected the plaintiff's ability to take a step in the prosecution of her claim. Because the *Duplechian* case focused on the facts supporting an abandonment dismissal, Pulmosan herein asserts that that case is distinguishable from the instant case. Also, Pulmosan points out that the issue of vested rights was not raised and addressed by this court in *Duplechian*.

However, Wise contends that the court in *Duplechian* correctly interpreted the amendment to La.Code Civ.P. art. 561, and correctly found that the amendment

6

should be applied retroactively. Additionally, Wise contends that the law of the case doctrine precludes Pulmosan from raising its vested rights argument. In that regard, the plaintiff points out that before Pulmosan was served as a defendant, his co-defendants had filed motions to dismiss which were denied by the trial court. According to Plaintiff, when Pulmosan joined the lawsuit and put forth its own motion to have the case dismissed for abandonment, this amounted to a "do-over" in violation of the law of the case doctrine and of the laws of solidarity.

For those plaintiffs prevented from taking steps in the prosecution of their claims due to the effect of Hurricanes Rita and Katrina, La.Code Civ.P. art. 561(B) extends that abandonment period from three to five years for "an action originally initiated by the filing of a pleading prior to August 26, 2005, which has not previously been abandoned . . . ." What is at issue in the instant case is whether the phrase "which has not previously been abandoned" refers to cases which were not abandoned before August 26, 2005, or to cases which were not abandoned before the amendment became effective on July 9, 2007. In the instant case, under the original abandonment rule, Wise's claim would have been considered abandoned for failure to take a step in the prosecution of his claim for more than three years by March 28, 2006. As such, the claim would have been abandoned before the 2007 effective date of the amendment to Article 561, but not before August 26, 2005. In the *Duplechian* case, this court determined that the extended abandonment period applied to cases which had not been abandoned before August 26, 2005. However, in the *Morgan* case, the court determined that the extended abandonment period could only apply to those cases which had not abandoned before the amendment to Article 561 took effect on July 9, 2007.

7

The Louisiana Supreme Court has held that when the legislature intends for a new law to be applied retroactively to revive an already prescribed claim, the legislature should give "at the very least, a clear and unequivocal expression of intent by the legislature for such an 'extreme exercise of legislative power.'" *Chance v. American Honda Motor Co., Inc.*, 93-2582, p. 2 (La. 4/11/94), 635 So.2d 177, 178. Pulmosan in the instant case accurately points out that the rights associated with abandonment are similar to those associated with prescription. As such, there is merit to Pulmosan's argument that there are constitutional problems with retroactively taking away a defendant's right to have a case dismissed for abandonment once he has acquired that right. Also, the statute does not expressly state any legislative intent to revive claims which were abandoned between August 26, 2005, and the amendment's 2007 effective date.

For these reasons, we find that the trial court erred in denying Pulmosan's motion to dismiss the plaintiff's claims for abandonment. Accordingly, we hereby reverse and set aside the trial court's ruling denying Pulmosan's motion to dismiss and render judgment in favor of Pulmosan, dismissing all claims against Pulmosan with prejudice at the plaintiffs' cost. The writ application is therefore granted and made peremptory.

**WRIT GRANTED AND MADE PEREMPTORY.**

# STATE OF LOUISIANA

## COURT OF APPEAL THIRD CIRCUIT

### 09-426

CLARENCE HENRY, ET AL

VERSUS

SHIPYARD, INC. ET AL

COOKS, J. DISSENTS

The language used in 561(A)(2) clearly expresses the legislature's intent to apply the abandonment extension retroactively.

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

CLARENCE HENRY, ET AL.

V.

SBA SHIPYARD, INC., ET AL.

**Saunders, J., dissents and assigns written reasons.**

I agree with the forceful reasoning contained in Judge Gremillion's studied and moving dissent. Thus, I dissent. The text of amended La.Code Civ.P art. 561 Paragraph A(2) now states that the five-year abandonment period applies to "an action originally initiated by the filing of a pleading prior to August 26, 2005, which has not previously been abandoned in accordance with the provisions of Subparagraph (1) of this Paragraph . . . ." Chief Justice Calogero, in his written reasons explains why he would grant a rehearing in *Harris v. Stogner*, 07-1451, p. 2 (La. 1/11/08), 972 So.2d 326, 327, stated, "[f]rom a practical and logical point of view, the word 'previously' in [La.Code Civ.P. art. 561, Paragraph A(2)] must have been intended by the Legislature to refer to actions not abandoned prior to August 26, 2005. No other interpretation of the amendment is reasonable." I agree with Chief Justice Calogero.

Chief Justice Calogero, in *Harris*, goes on to aptly state:

> I believe interpreting the 2007 amendment to La.C.C.P. art. 561 to apply only to those cases that become abandoned after the effective day of July 9, 2007, would essentially cancel the exact benefits the amendment was adopted to address. If the amendments do not apply until July 9, 2007, none of the cases pending at the time of Hurricanes Katrina and Rita that would have been abandoned between August 25, 2005, and July 9, 2007, would be given the benefits of the amendment. And, I would suggest that the cases that would otherwise be abandoned

during that period are the exact cases the amendment was designed to address since they are the only cases in which the party seeking [to] avoid a finding of abandonment would likely be able to prove that his failure to prosecute or defend within the three-year period "was caused by or was a direct result of" either Hurricane Katrina or Hurricane Rita. As everyone involved in the legal community knows, it was only during those days and months immediately following the storms that legal activity in the State of Louisiana was stymied by the various circumstances caused by the storm.

*Harris*, 972 So.2d at 327.

Pulsoman argues that it had a vested right to have Wise's claim dismissed for abandonment and cites *Stelly*, 646 So.2d 912 for the proposition that "no law can be applied retroactively so as to divest a party of a vested right." Regarding La.Civ.Code 6 and vested rights, it is clear that a majority of this court feels differently than I regarding whether La.Code Civ.P art. 561 is procedural as I wrote in *Duplechian*. However, regardless of whether the amendment is procedural or substantive, it is clear that our legislature was faced with a crisis of unprecedented proportion. I feel such a crisis provided justification for our legislature to use an "extreme exercise of legislative power." *Chance*, 635 So.2d at 178.

Surely the victims of Hurricanes Katrina and Rita have endured enough so as be spared the dire legal ramifications that the majority's opinion imposes upon them. In my view, those victims have a vested right in their pending legal matters that existed prior to, and is greater than, those of the persons attempting to now hide behind an illogical interpretation of the letter of the law. We are instructed by our supreme court, in *Clark*, 785 So.2d at 785, to interpret Article 561"liberally. . . in favor of maintaining a plaintiff's suit." I feel that we are failing to do by granting this writ. I respectfully dissent.

CLARENCE HENRY

VERSUS

SBA SHIPYARD

**GREMILLION, Judge, dissenting.**

The majority opinion chooses to answer only one of two relevant questions here. That question is whether the legislature intended to revive claims that died by virtue of abandonment between August 26, 2005 and July 9, 2007. Respectfully, it is my position that the majority incorrectly answered that threshold question. In so doing, it leaves the second, and much more important question unanswered: Can the legislature revive those dead and abandoned claims? I will address both questions, in turn.

## LEGISLATIVE INTENT

When Hurricane Katrina entered the Gulf of Mexico at 5:00 a.m. on August 26, 2005, it brought with it a level of chaos, destruction, and misery that Louisiana had never seen before. It resulted in the death of 2,057 people[1] and 81.2 billion dollars in storm damage.[2] When Hurricane Rita hit just a few days later, it increased the combined economic losses for both hurricanes to well over 90 billion dollars.[3] By comparison, the great San Francisco earthquake of 1906 killed 700.[4] Following the

---

[1]Http://www.americanheritage.com/articles/web/20060905-natural-disasters.shtml.

[2]Knabb, Richard D; Rhome, Jamie R.; Brown, Daniel P (December 20, 2005; updated August 10, 2006). "Tropical Cyclone Report: Hurricane Katrina: 23-30 August 2005" (PDF). National Hurricane Center. Http://www.docstoc.com/docs/2922116/Tropical-Cyclone-Report-Hurricane-Katrina-August-Richard-D-Knabb-Jamie.

[3]Knabb, Richard D; Brown, Daniel P.; Rhome, Jamie R. (March 17, 2006; updated August 14, 2006). "Tropical Cyclone Report: Hurricane Rita: 18-26 September 2005" (PDF). National Hurricane Center. Http://www.nhc.noaa.gov/pdf/TCR-AL182005_Rita.pdf.

[4]Http://www.americanheritage.com/articles/web/20060905-natural-disasters.shtml

1992 landfall of Hurricane Andrew, 40.7 billion dollars worth of damages ensued.[5]

For purposes of this analysis, it is important to note that all of the aforementioned death and destruction occurred in the days, weeks, and months that followed August 26, 2005. None of it occurred in the days, weeks, and months that followed July 9, 2007. It is for that reason that I am persuaded by the rationale provided by former Chief Justice Calogero in *Harris v. Stogner*, 07-1451 (La. 1/11/08), 972 So.2d 326. Therein he stated that "[f]rom a practical and logical point of view [the operative language of the amendment in question] must have been intended by the Legislature to refer to actions not abandoned prior to August 26, 2005. No other interpretation of the amendment is reasonable." *Id.* at 327. Justice Calogero went on to state that using the 2007 effective date of the amendment "would essentially cancel the exact benefits the amendment was adopted to address." *Id.*

Thus, I respectfully disagree with the view of the majority. The legislature clearly and unequivocally intended that the amendment be given retroactive effect to those cases in which the three-year period had not run on August 26, 2005. No other interpretation of the amendment is reasonable.

### LEGISLATIVE AUTHORITY

Had the majority concluded that the legislature did, in fact, intend to revive a class of claims abandoned between August 26, 2005 and July 9, 2007, they would have had to address the far more challenging question of whether our legislature actually has the power to do such a thing. The current State of Louisiana jurisprudence answers that question with an unequivocal "no." *Estate of Williams v. Louisiana Office of Risk Management*, 93-3944 (La.App. 3 Cir. 3/30/94),634 So.2d 260, *writ denied*, 94-0793 (La. 5/6/94), 637 So.2d 1054, and *Southern Silica of*

---

[5]Rappaport, Ed (1993). "Hurricane Andrew Preliminary Report." National Hurricane Center. Http://www.nhc.noaa.gov/1992andrew.html.

*Louisiana, Inc. v. Louisiana Insurance Guaranty Association*, 07-1680 (La. 4/8/08), 979 So.2d 460.

I submit, however, that the current State of Louisiana's law in this area exists precisely because the ruination caused by Hurricanes Katrina and Rita is unique in our history. Such destruction and upheaval have been seen before in other parts of our country. In places where such misery has previously been wrought, the law is different. In those places, "[t]he law seems fairly well-settled that the legislature may under certain circumstances, enact a Statute of Limitations which has the effect of reviving a cause of action barred under a previously applicable Standard of Limitations." *Hintz v. State Tax Commission*, 55 Misc.2nd 474, 285 N.Y.S.2nd 482, 485 (1966). Historical examples of calamities that rival Katrina/Rita are few, but they are unforgettable.

## A WORLD WAR

After World War II, the New York State legislature determined that it was unjust to allow a statute of limitations to toll against a plaintiff when that plaintiff's failure to prosecute his claim resulted from hardships related to the war. In *Gallewski v. H. Hentz & Co.*, 301 N.Y. 164, 93 N.E.2nd 620 (1950), the injured party was arrested and deported to a concentration camp in Czechoslovakia, then occupied by the German army, and there detained. He was never heard from again. In *Von Hofmannsthal v. Wolfe*, 276 A.D.223, 93 N.Y.S.2nd 550 (1949), the aggrieved party spent the war in Austria, which was also occupied by the German army. The statute of limitations ran on both of these claims during or shortly after the war which officially ended on May 8, 1945.

Though these claims were both dead, the New York legislature revived them by statutory amendments made in 1948 and 1949. Even back then, New York's

3

highest court acknowledged that "most states hold that it is beyond the power of the legislature to revive causes of action after the limitation period has expired." *Gallewski*, 301 N.Y. 164, 171, 93 N.E.2d 620, 623. However, it relied on even older case law to conclude that "'this rule is not absolute and does not invalidate legislation lifting the bar where the circumstances are such as to indicate the presence of a strong moral obligation to do so.'" *Id. citing Huffman v. Alderson's Administrator*, 9 W.Va. 616.

Thus, the high court concluded that "World War II was an upheaval of unparalleled magnitude." *Id.* at 174, 674. Accordingly, "[t]o permit the Statute of Limitations to run against their claims during the continuance of such inability would not accord with elementary notions of justice and fairness." *Id.* at 175, 625.

## A GREAT DEPRESSION

The value of the property owned by many Americans plummeted in the Depression. Even worse: many of those same Americans lost their ability to pay their mortgages. Consequently, banks stepped in to assert their contractual rights to sell off the deeply undervalued properties in foreclosure sales.

The Minnesota legislature passed a law that extended the "period of redemption" from these foreclosure sales. The United States Supreme Court considered the question of whether this new Minnesota law could be enforced in *Home Building & Loan Association v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231 (1934). Though the Supreme Court clearly recognized what it called the "constitutional prohibition" against a state stripping a party of its rights under a contract, it went on to find as follows:

> It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by a great public calamity such as fire, flood, or earthquake.

4

*Id.* at 439.

Interestingly, the *Blaisdell* Court annunciated a five-part test of the permissibility of the emergency exercise of legislative power. Those five criteria can be boiled down to two. First, the emergency giving rise to the police power must be extreme, and second, the legislative fix must be reasonable, narrowly-tailored, and temporary. *Id*. The Louisiana legislature's temporary extension of the abandonment period from three years to five years is limited to only those cases where a Katrina/Rita related hardship can be proven. It also has a "sunset provision" of precisely five years after the legislature intended it to take effect. Consequently, it meets with the requirements of the *Blaisdell* test.

## A CIVIL WAR

Plaintiffs found it difficult to prosecute their cases during the American Civil War. As a consequence, the West Virginia legislature allowed these aggrieved plaintiffs to take an "oath" stating exactly how long they had been obstructed by war, insurrection, or rebellion. Then, the time during which such obstruction continued was not to be computed in determining when the matter would be time-barred. The supreme court of that state not only ruled that the statute was valid, but that it applied both to suits pending and to suits brought after its passage. *Huffman v. Alderson's Admin.* 9 W.Va. 616. (W.Va. 1876). Thus, the amendment was said to be retroactive and was used to revive dead claims.

## CONCLUSION

There is no question that the legislature enacted a statute that was intended to actually help Katrina and Rita victims. The question should not even be whether Louisiana has ever allowed its legislature to revive time-barred claims. Clearly, it never before has done so. Rather, the real question that the majority should have

5

answered is whether the misery wrought by Katrina/Rita rises to the level of a World War or a Great Depression or a Civil War. Because the answer is "yes," the statute should be given retroactive effect, and the defendant's writ should be denied. As it has been written:

> [I]n some cases, the right to interpose a bar to a right of action constitutes in effect a property right which the Legislature may not take away, but at the other extreme are cases where both instinct and reason revolt at the proposition that redress for a wrong must be denied because the legislature may not remove a statutory bar which has conferred an immunity which is contrary to all prevailing ideas of justice.

*Robinson v. Robins Dry Dock and Repair Co.*, 238 N.Y. 271, 274, 144 N.E. 579 (N.Y. 1924).