GLENN HANKEL

VERSUS

JEFFERSON PARISH FIRE DEPARTMENT

NO. 19-CA-613

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION
DISTRICT 7
STATE OF LOUISIANA
NO. 18-3849
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

September 22, 2020

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and John J. Molaison, Jr.

**AFFIRMED**
 **JJM**
 **JGG**

**DISSENTS WITH REASONS**
 **FHW**

COUNSEL FOR PLAINTIFF/APPELLANT,
GLENN HANKEL
    Frank A. Bruno

COUNSEL FOR DEFENDANT/APPELLEE,
JEFFERSON PARISH FIRE DEPARTMENT
    Michael F. Nolan

**MOLAISON, J.**

In this workers' compensation case, claimant, Glenn Hankel, appeals the decision of the Office of Workers' Compensation Judge that granted summary judgment in favor of his former employer, the Jefferson Parish Fire Department ("JPFD"), on the issue of permanent partial disability benefits related to claimant's work-related hearing loss. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mr. Hankel was employed by the JPFD from October 11, 1986, until his retirement on November 7, 2017. Mr. Hankel claims that, over time, he was exposed to loud noise as a firefighter sufficient to cause a permanent partial loss of his hearing in both ears.

The record shows that Mr. Hankel had yearly examinations of his hearing from approximately 2004 through 2018, and into his retirement. These tests, as a whole, revealed an accelerating cumulative deterioration of Mr. Hankel's ability to hear out of either ear. When he retired in 2018, Mr. Hankel was diagnosed as having "38% binaural loss."

After his retirement, Mr. Hankel filed a disputed claim for compensation on June 11, 2018, which sought indemnity benefits for his permanent partial disability caused by his noise-induced hearing loss, pursuant to La. R.S. 23:1221(4)(p). JPFD filed a motion for summary judgment at that time, arguing that Mr. Hankel's hearing loss was an occupational disease, rather than an injury precipitated by some specific event, which disqualified him from coverage under La. R.S. 23:1221(4)(p). After the OWC judge denied JPFD's motion for summary judgment on November 1, 2018, the parties entered into a consent judgment awarding Mr. Hankel medical benefits, including $3,890.00 for previously purchased hearing aids and payment for all future hearing loss related medical

treatment and expenses. The consent judgment also provided that JPFD was to pay $5,000.00 in attorney fees.

JPFD thereafter filed a second motion for summary judgment on the issue of Mr. Hankel's entitlement to permanent partial disability benefits, which the court granted on October 4, 2019. Mr. Hankel timely filed the instant appeal.

## LAW AND ANALYSIS

Because this case was decided on summary judgment rather than after a trial, the manifest error standard of review does not apply in this case; instead, we review the granting of summary judgment *de novo*. *Peironnet v. Matador Res. Co.*, 12–2292 (La. 6/28/13), 144 So.3d 791; *Schroeder v. Board of Sup'rs of La. State Univ.*, 591 So.2d 342 (La. 1991). Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. *Breaux v. Fresh Start Properties, L.L.C.*, 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849, 852.

In the instant case, the OWC judge made several specific findings of fact in its October 4, 2019 Order. Specifically, the court found that Mr. Hankel was "exposed to injurious noise" while employed with the JPFD which caused a permanent partial loss of hearing. The court classified the hearing loss as a "cumulative hearing loss that occurred over time." Finally, in determining that Mr. Hankel was not entitled to permanent partial benefits pursuant to Louisiana Revised Statute 23:1221(4)(p), the court concluded that Mr. Hankel's hearing loss was not the result of a single traumatic event.

### *The La. R.S. 33:2581.1 Consent Judgment*

La. R.S. 33:2581.1, which is titled "Development of hearing loss during employment in the classified fire service; occupational disease," is among a special

class of Louisiana Revised Statutes found at Title 33, Chapter 5, Part 4, specifically created by the legislature to address service-related occupational injuries that firefighters and other first responders may develop throughout their careers.[1] Although not specifically incorporated within the Louisiana Workers' Compensation Act, La. R.S. 23:1021 *et seq.*, courts have consistently applied these statutes to workers' compensation cases.

La. R.S. 33:2581.1 provides:

> A. Any loss of hearing which is ten percent greater than that of the affected employee's comparable age group in the general population and which develops during employment in the classified fire service in the state of Louisiana shall, for purposes of this Section only, be classified as a disease or infirmity connected with employment. The employee affected shall be entitled to medical benefits including hearing prosthesis as granted by the laws of the state of Louisiana to which one suffering an occupational disease is entitled, regardless of whether the fireman is on duty at the time he is stricken with the loss of hearing. Such loss of hearing shall be presumed to have developed during employment and shall be presumed to have been caused by or to have resulted from the nature of the work performed whenever same is manifested at any time after the first five years of employment in such classified service. This presumption shall be rebuttable by evidence meeting judicial standards and shall be extended to an employee following termination of service for a period of twenty-four months.

The record before us shows that Mr. Hankel used the presumption that his hearing loss was an occupational injury sustained during his career as a firefighter. For example, in opposing the JPFD's motion for summary judgment, Mr. Hankel asserted:

> Here, Hankel satisfies all of the criteria of §2581.1, and therefore his hearing loss is presumed to have been caused by his employment as a firefighter, and thus he will not bear the burden of proof on this issue at trial. *McKenzie v. City of Bossier City*, 22,578 (La. App. 2 Cir. 8/21/91), 585 So.2d 1229, 1232 (holding that companion provision, R.S. 33:2581, the "fireman's heart-lung statute" establishing similar presumption applies to workers compensation claims).

---

[1] See also, for example, The Heart and Lung Statute, La. R.S. 33:2581, Development of heart and lung disease during employment in classified fire service; occupational disease, and La. R.S. 33:2581.2, Posttraumatic stress injury; presumption of compensability.

Also, medical records included in Mr. Hankel's opposition to the JPFD's motion for summary judgment, demonstrated that his hearing loss was ten percent greater than that of his comparable age group in the general population and developed during employment in the classified fire service, which is the very specific threshold needed to use the presumption found in La. R.S. 33:2581.1. For its part, the JPFD acknowledged that Mr. Hankel's hearing loss was an occupational injury properly addressed by La. R.S. 33:2581.1.

In the August 15, 2019 consent judgment, Mr. Hankel was given every benefit provided under La. R.S. 33:2581.1, consisting of workers' compensation medical benefits for past payments that Mr. Hankel had paid for personally, hearing aids previously purchased by Mr. Hankel, and future medical treatment for hearing loss. Also, the JPFD agreed to pay to resolve all attorney fees disputes.

*Permanent Partial Disability Benefits*

Once a disease or condition covered by La. R.S. 33:2581 is found to exist, the applicability of the workers' compensation provisions is resolved and questions attendant to compensation are then decided pursuant to La. R.S. 23:1021 *et seq.* *Amos v. Ouachita Par. Police Jury*, 43,289 (La. App. 2 Cir. 6/18/08), 991 So.2d 102, 111. In granting JPFD's second motion for summary judgment, the OWC judge relied on the plain language of La. R.S. 23:1221(4)(p), which provides for permanent partial disability in instances where "the employee is seriously and permanently disfigured or suffers a permanent hearing loss solely due to a single traumatic accident." Specifically, in its reasons for judgment,[2] the OWC judge explained:

---

[2] We note that appellate courts do not review reasons for judgment as a part of the judgment itself. La. C.C.P. art. 1918; *Burmaster v. Plaquemines Parish Government*, 07-1311 (La. 8/31/07), 963 So.2d 378, 379. The written reasons for judgment are merely an explication of the trial court's determinations. *State*

Upon reviewing the medical evidence and medical testimony, the Court concludes that Claimant's hearing loss is a cumulative hearing loss not covered under La R.S. 23:1221(4)(p) which provides benefits to an employee who suffers a permanent hearing loss solely due to a single traumatic accident (emphasis added). Claimant's arguments have merit that should be addressed with the legislature for changes in the current statute. Unfortunately, as written, La R.S. 23:1221(4)(p) does not provide benefits for cumulative hearing loss. As such, there are no genuine issues of material fact that Claimant is not entitled to permanent partial disability indemnity benefits in accordance with La. R.S. 23:1221(4)(p).

On appeal, Mr. Hankel asserts that the trial court erred by failing to award him indemnity benefits under the workers' compensation statute for his hearing loss, and by failing to award attorney fees and penalties based upon the JPFD's failure to pay indemnity benefits. Conversely, JPFD argues that La. R.S. 23:1221(4)(p) does not apply to provide a benefit to Mr. Hankel because his hearing loss was not due to a single traumatic accident during his employment.

It is undisputed that Mr. Hankel's hearing loss was not the result of a single injury. However, in arguing that his hearing loss qualifies him for workers' compensation, although his hearing loss occurred over time, Mr. Hankel relies primarily on the case of *Arrant v. Graphic Packaging Int'l, Inc.*, 13-2878 (La. 5/5/15), 169 So.3d 296. In that case, the Court held that the plaintiffs, current and former employees of a paper mill, box plant, and carton plant, had sustained noise-induced hearing loss over time that qualified as a "personal injury by accident" within the meaning of La. R.S. 23:1021(1), and as an "occupational disease" within the meaning of the LWCA.

### The Purpose Of The Louisiana Workers' Compensation Act

"The purpose of the Workers' Compensation Act is to set up a court-administered system to aid injured workmen by relatively informal and flexible

---

*in the Interest of Mason*, 356 So.2d 530, 532 (La. App. 1 Cir. 1977). The Louisiana Supreme Court has held, however, that a court of appeal can use reasons for judgment to gain insight into the district court's judgment, and we refer to them now for that purpose. *See, Wooley v. Lucksinger*, 09-0571 (La. 4/1/11), 61 So.3d 507.

proceedings that are to be interpreted liberally in favor of workmen." *Rhodes v. Lewis*, 01-1989 (La. 5/14/02), 817 So.2d 64, 69. One of the primary purposes of the Workers' Compensation Act is to protect workers; a policy behind the Act is to keep the injured employee and his or her family from destitution. *Breaux v. Hoffpauir*, 95-2933 (La. 5/21/96), 674 So.2d 234, 237. It is well settled that when courts interpret provisions of the Workers' Compensation Act, the basic history and policy of the compensation movement must be taken into account. *Stelly v. Overhead Door Company of Baton Rouge*, 94-0569 (La. 12/8/94), 646 So.2d 905; *Roberts v. Sewerage & Water Bd. of New Orleans*, 92–2048 (La. 3/21/94), 634 So.2d 341, 345. In *Rando v. Anco Insulations Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065, 1076, the Louisiana Supreme Court recounted:

> The history of the workers' compensation begins when the state of New York passed the first workers' compensation statute in the United States in 1910. Four years later, following the submission of a lengthy report and recommendation by a Commission Governor L.E. Hall tasked to study and draft laws providing for compensation to injured employees, the Louisiana Legislature enacted one of the first workers' compensation statutes in the South. In its report to the Legislature, the Commission detailed there was "conservatism required" in enacting such a system of laws, because of the diverging approaches by the differing states. Furthermore, it was noted the concept of workers' compensation in Louisiana was "all in the experimental state." La. Sen. Journal Reg. Sess.1914, p. 33. The Commission found conservatism was required because "no matter how moderate the act may be in its provisions, it is a radical departure, being suddenly adopted through the United States, from the line of thought which prevailed up to 1910." Id.; see also 13 Malone and Johnson, Louisiana Civil Law Treatise § 36 (4th ed.2002) (noting that although it was impressed with the diversity of treatment accorded the various workers' compensation problems in the various states commented, "it was aware of the novelty of the entire compensation principle and the possibilities of failure that attended many of the more experimental measures."). Against that backdrop, La.Rev.Stat. § 23:1031 (1914) originally provided an employee who "receives personal injury by accident arising out of and in the course of [his] employment" is to receive compensation.

> In 1918, the Legislature amended La. R.S. § 23:1021 to define the terms

accident and personal injury as follows:

> (1) "Accident" means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.

…

(7) "Injury" and "Personal Injuries" includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.

*Rando*, *supra*, 16 So.3d at 1077.

As the *Rando* Court stated,

While the purpose of the 1914 statute may have initially been to cover only work-related "accidents," with the advancement of the industrial revolution and growing number and types of diseases arising from work-related activities, a liberal interpretation was given to the statute which "effectuated its beneficent purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the costs in channels of commerce." 16 So.3d at 1077.

Thereafter Louisiana courts, in interpreting the 1914 statute and its amendment in 1918, included certain occupational illnesses and diseases in their classification of "accidents." *Parks v. Insurance Co. of North America*, 340 So.2d 276, 281 (La. 1976).

Introduction in 1952 of "occupational disease" in addition to "personal injury by accident" as a type of injury compensable under the LWCA ultimately led the legislature to redefine "accident" in narrower terms, to draw a meaningful distinction between the two types. The current, revised definition of "accident" came into effect in 1990, and reads as follows:

**(1)** "Accident" means an unexpected or unforeseen **actual, identifiable, precipitous** event happening suddenly or violently, **with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.**

La. R.S. 23:1021(1) (2014) (emphasis added to words not in the older version of definition). These additions in the modern definition appear to have been a clear attempt by the legislature to underscore its desire that "accidents" be understood as temporally isolated events, and that "personal injuries" caused by

them not be understood to include gradual diseases such as noise-induced hearing loss, which more appropriately would fall within the scope of "occupational disease."

However, in interpreting the LWCA statutes, the Louisiana Supreme Court found that a noise-induced hearing loss may be classified as both an occupational disease and a personal injury caused by an accident. *Arrant, supra.* The Court reasoned that each occurrence of excessive noise was a single traumatic injury to the ear even though the impact caused by excessive noise only gradually became effective over time, with repeated exposure. *Arrant* at 307-08.

The most recent case to interpret *Arrant* is *Hartman v. St. Bernard Par. Fire Dep't & Fara*, 20-0103 (La. App. 4 Cir. 5/20/20), 2020 WL 2561480, which is factually similar to the case at bar. In that case, James Hartman, Jr., the claimant, filed a claim seeking permanent partial disability benefits for a permanent hearing loss incurred as a result of repeated exposure to high noise levels arising out of his occupation as a fireman with the St. Bernard Parish Fire Department. The Office of Workers' Compensation Court denied him permanent partial disability benefits, upon finding that Mr. Hartman sustained a cumulative hearing loss and that La. R.S. 23:1221(4)(p) only provides benefits for permanent hearing losses resulting solely from a single traumatic accident.

In affirming the OWC's denial of benefits to Mr. Hartman, the Fourth Circuit concluded that "the language of R.S. 23:1221(4)(p) restricting permanent partial disability payments to hearing losses resulting solely from a single traumatic accident is clear and unambiguous." *Id*. at *3. The court declined to apply the Louisiana Supreme Court's reasoning in *Arrant*, stating "We agree with Mr. Hartman that *Arrant* conclusively established that work-related gradual hearing loss claims may be compensable under the LWCA. However, *Arrant* made no affirmative finding that gradual hearing losses are specifically

compensable under R.S. 23:1221(4)(p). *Id*. at *2. The Fourth Circuit concluded that pursuant to the statute's clear provisions, "Mr. Hartman's arguments that R.S. 23:1221(4)(p) extends permanent partial disability benefits to hearing losses arising out of a series of single accidents and that the OWC judge unconstitutionally deprived him of a remedy lacked merit. *Id.* at *3.

Given the factual similarities and issues raised in *Hartman* to the instant case, we are persuaded by the Fourth Circuit's reasoning and conclusion on this issue. We would further distinguish *Arrant* on the basis that the plaintiffs, in that case, were not firefighters who benefitted from the presumption of occupational hearing loss and accompanying damages under La. R.S. 33:2581.1.

## CONCLUSION

In the instant case, there is no dispute that Mr. Hankel's hearing loss was gradual and not the result of a single accident or event. The plain language of La. R.S. 23:1221(4)(p) only provides benefits for permanent hearing losses resulting solely from a single traumatic accident. Accordingly, after a *de novo* review of the record, we find that there is no genuine issue as to material fact and that the JPFD is entitled to judgment as a matter of law. Thus, we find no error in the trial court's ruling that Mr. Hankel is not entitled to permanent partial disability benefits for his hearing loss.

## DECREE

Accordingly, for the foregoing reasons, the judgment of the OWC court, denying permanent partial disability benefits to Mr. Hankel is affirmed.

**AFFIRMED**

GLENN HANKEL

VERSUS

JEFFERSON PARISH FIRE
DEPARTMENT

NO. 19-CA-613

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


**WICKER J., DISSENTS WITH REASONS**


I respectfully dissent and would reverse the ruling of the trial court granting summary judgment to defendant, Jefferson Parish Fire Department (JPFD), and remand the matter for further proceedings. In my opinion claimant, Glenn Hankel, presented sufficient evidence to preclude summary judgment on his claim for permanent partial disability benefits. Further, I am of the opinion that, as the intermediate courts who are bound by the decisions of the Louisiana Supreme Court, both the Louisiana Fourth Circuit Court of Appeal in *Hartman v. St. Bernard Par. Fire Dept' & Fara*, 20-0103 (La. App. 4 Cir. 5/20/20), 2020 WL 2561480 and this Court in this case have erred in failing to follow the clear dictates of the Louisiana Supreme Court in *Arrant v Graphic Packaging Int'l, Inc.,* 13-2878, 169 So. 3d 296, 305 (La. 5/5/15).

The question before this Court is not whether Mr. Hankel's hearing loss is covered by La. R.S. 33:2581.1 as a hearing loss developed "during employment in the classified fire service; occupational disease" or an occupational disease as defined by La. R.S. 23:1031.1B. There is also no dispute that Mr. Hankel's hearing loss was found to be "occupational noise-induced hearing loss" ("NIHL"). Mr. Hankel was a firefighter who suffered ever worsening hearing deficits of an amount ten percent greater than that of the relevant general population and his hearing loss was caused by causes and conditions characteristic of and peculiar to his particular trade. The sole issue presented to the worker's compensation court,

now presented to this Court, is whether the work-related NIHL suffered by Mr. Hankel also falls within the ambit of La. R.S. 23:1221(4)(p)'s indemnification as a "permanent hearing loss solely due to a [number of] single traumatic accident[s]," thus entitling him to permanent partial disability benefits.

To be clear, Mr. Hankel has already been awarded medical benefits for an occupational injury pursuant to La. R.S. 33: 2581.1. We are now examining whether Mr. Hankel is additionally entitled to "compensation not to exceed sixty-six and two-thirds percent of wages for a period not to exceed one hundred weeks" pursuant to La. R.S. 23:1221(4)(p). In my opinion, the *Arrant* Court, with Justice Greg Guidry writing for a five-justice majority[3], clearly, unequivocally and in detailed fashion answered this question affirmatively. *Arrant v Graphic Packaging Int'l, Inc.,*13-2878, 169 So. 3d 296, 305 (La. 5/5/15).

The majority in this case concedes that

"...in interpreting the LWCA statutes, the Louisiana Supreme Court found that a noise-induced hearing loss may be classified as both an occupational disease and a personal injury caused by accident. The [*Arrant*] Court reasoned that each occurrence of excessive noise was a single traumatic injury to the ear even though the impact caused by excessive noise only gradually became effective over time, with repeated exposure." Majority opinion at p.10 (internal citations omitted).

Nevertheless, in relying upon the Louisiana Fourth Circuit's opinion in *Hartman v. St. Bernard Par. Fire Dep't & Fara,* 20-0103 (La. App. 4 Cir. 5/20/20), 2020 WL 2561480, the majority here declined to follow Justice Guidry's explicit reasoning in *Arrant* on the basis that "*Arrant* made no affirmative finding that gradual hearing losses are specifically compensable under R.S. 23:1221(4)(p),". Majority opinion at p.10; *see also Hartman*, 2020 WL 2561480 at *2.

---

[3] In *Arrant*, *supra*, Justice Knoll, joined by Justice Johnson, dissented and would have found that noise-induced hearing loss neither classifies as an occupational disease nor a personal injury by accident, and therefore does not fall within the exclusive remedy of the LWCA. Thus, they would have reversed the appellate court and reinstated the trial court's ruling, allowing the proceedings in tort to continue.

In my humble opinion this court is not at liberty simply to disregard the clear and unambiguous reasoning and finding of the Louisiana Supreme Court merely because, while relying upon the clear language of La. R.S. 23:1221(4)(p) to find that Mr. Arrant had sustained a personal injury caused by a series of single traumatic accidents and related statutory authority, the High Court failed to specifically cite the article. *Arrant*, 169 So.3d at 307-08.

> Louisiana Revised Statutes 23:1221 in relevant part states:
>
> (4) Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
>> (p) …where the employee…suffers a permanent hearing loss solely due to a single traumatic accident….

The majority appears to be of the opinion that La. R.S. 23:1221(4)(p) is limited to an injury caused by a single isolated traumatic event and does not apply in situations in which a worker suffers multiple separate injuries to the same anatomical area caused by multiple isolated traumatic events. To draw a clear analogy: in a situation in which a chemical plant employee suffers respiratory distress as a result of an isolated irregular blast of chemicals, recovers sufficiently to return to work with a modicum of permanent respiratory tract injury and thereafter suffers a second chemical assault caused by another isolated irregular chemical blast with additional permanent respiratory injury, the majority would apparently find that worker to suffer from occupational disease but not from a compensable 23:1221(4)(p) injury. I disagree.

In *Arrant* Justice Guidry stated the res nova issue before the court as, "whether gradual noise induced hearing loss caused by occupational exposure to hazardous noise levels is a personal injury by accident or an occupational disease, or both under the Louisiana Workers' Compensation Act." Further, that the consolidated cases before them required the Court to determine, "whether the NIHL is a covered "personal injury by accident" and/or an "occupational disease

within the meaning of the LWCA in its various configurations over the years." The Supreme Court specifically found that, "noise-induced hearing loss qualifies as a "personal injury by accident" within the meaning of La. Rev. Stat. 23:1021(1), at least until the definition of "accident was revised in 1990."

In his search to discern whether NIHL was a "personal injury by accident" within the meaning of La. R.S. 23:1021(1) Justice Guidry turned to the testimony of Dr. Ross Roeser, an expert in audiology who testified both in *Arrant* as well as to an earlier NIHL case:

> "Plaintiffs' expert in audiology, Dr. Ross Roeser, explained the anatomical structure of the ear, as well as a discussion of the nerves that carry sound to the brain. He testified that the snail-shaped structure is the auditory portion of the inner ear called the cochlea. He explained the cochlea has two and a half turns, which, if unrolled longitudinally, could be said to be "tonotopically" organized. He explained that "tonotopically" means each distinct anatomical part is responsible for a different frequency, and high frequencies of sound are heard close to where the mechanical force enters the cochlea. This is consistent with Dr. Roeser's testimony in a previous NIHL case, in which he explained that, when a high level of energy enters the cochlea "it literally destroys, it damages and destroys that row of hair cells in that particular part of the ear." **Thus, there is an immediate injury to the inner ear, even though the effect of the damage thereto only gradually becomes perceptible over time and only with repeated or continuous exposures to the hazardous levels of noise**. In this regard, **the excessive noise is a traumatic injury to the ear. This is not a long-latency occupational disease case. The damage to the inner ear is immediate, though imperceptible until the damage cumulates into a measurable hearing shift or loss.**" *Arrant*, 169 So.3d at 307-08 (referring to *Becker v. Murphy Oil Corp.*, pp. 27-28, 10-1519 (La.App. 4 Cir. 6/2/11) (internal citations omitted, emphasis added).

Based upon this testimony the Supreme Court specifically found that this exposure to loud noises causing inner ear damage constituted an accidental injury:

> **Such traumatic damage to the inner ear certainly qualifies as an "injury"** within the meaning of the LWCA, because the high levels of energy noise entering the ear cause damage to the inner ear "by violence to the physical structure of the body," i.e., the hairs and cells in the inner ear**. Furthermore, the exposure to hazardous levels of industrial noise, as alleged by the plaintiffs, qualifies as an accident** because the hazardous

level of industrial noise, a large quantity of energy that did violence and damage to the inner ear, was **an "unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."** As we have reiterated, "when the performance of the usual and customary duties of a workman cause or contribute to a physical breakdown, **the statutory requirements for an accidental injury are present.**

*Arrant*, 169 So.3d at 308 (internal citations omitted).

While in *Arrant* Justice Guidry was referring specifically to the pre-1990 definition of "accident", his analysis applies equally here. In 1918, the Legislature amended La. R.S. § 23:1021 to define the terms accident and personal injury as follows:

> (2) "Accident" means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.
> …
>
> (7) "Injury" and "Personal Injuries" includes only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted.

This definition remained in effect until the current, revised definition of "accident" came into effect in 1990, and reads as follows:

> **(2)** "Accident" means an unexpected or unforeseen **actual, identifiable, precipitous** event happening suddenly or violently, **with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.**
>
> La. R.S. 23:1021(1) (2014) (emphasis added to words not included in the pre-1990 definition).

Dr. Roeser thoroughly described the effects of the NIHL caused by an individual noise event upon the human ear; he told the Court "it literally destroys, it damages and destroys that row of hair cells in that particular part of the ear."

Likewise, the Supreme Court held that NIHL is an "accident as currently defined by La. R.S. 23:1021, "even though the effect of the damage thereto only gradually becomes perceptible over time and only with repeated or continuous exposures to the hazardous levels of noise." *Arrant*, 169 so.3d at 307-08.

The majority finds that "23:1221(4)(p) does not apply to provide a benefit to Mr. Hankel because his hearing loss was not due to a single traumatic accident during his employment." However, this is contrary to the holding in *Arrant*; rather, in my opinion, the Louisiana Fourth Circuit Court of Appeal in *Hartman v. St. Bernard Par. Fire Dept' & Fara*, 20-0103 (La. App. 4 Cir. 5/20/20), 2020 WL 2561480 and this court in this case have made arguments identical to those made by Justice Jeannette Knoll in her dissent in *Arrant*, joined by Chief Justice Johnson. There Justice Knoll argues that that NIHL does not classify as a personal injury by accident because "given its gradual and insidious nature, gradual hearing loss is neither palpable, nor 'sudden,' 'acute,' or 'identifiable.'" In this case, the majority likewise states that the plaintiffs are ineligible for permanent partial disability where it is undisputed that "Mr. Hankel's hearing loss was gradual and not the result of a single accident or event." The majority is correct that Justice Guidry did not specifically refer to La. R.S. 23:1221(4)(p) in his discussion or findings. Nevertheless, the Supreme Court's explicitly detailed findings in *Arrant* mandate the result that La. R.S. 23:1221(4)(p) applies in NIHL cases.

Again,

(4) Permanent partial disability…..
    (p) …where the employee…suffers a permanent hearing loss solely due to a single traumatic accident….

Justice Guidry and the rest of the Supreme Court majority in *Arrant* plainly considered and disregarded the arguments made there by the dissenting justices and here by the majority. The *Arrant* court squarely and in explicit detail held that: (1) NIHL is caused by multiple individual assaults to the ear which "literally

destroys… the row of hair cells in that particular part of the ear;" (2) there is an immediate injury to the inner ear, even though the effect of the damage thereto gradually becomes perceptible over time; (3) NIHL is a personal injury by accident; and (4) that NIHL is caused by multiple single traumatic accidents each of which cause immediate injury. *Arrant*, 169 So.3d at 307-308 (quotation marks omitted). To this end, even though the *Arrant* Court did not explicitly refer to 23:1221(4)(p), proper application of the law unquestionably provides that Mr. Hankel's occupational NIHL falls within the ambit of La. R.S. 23:1221(4)(p)'s indemnification for "permanent hearing loss solely due to a single traumatic accident." *Id.*

In this case, the worker's compensation court granted JPFD's motion for summary judgment, and dismissed plaintiff's claim for partial permanent disability. There is no doubt that Mr. Hankel suffers a disability, namely hearing loss, caused by his work. Because the Louisiana Supreme Court, in *Arrant*, found that a noise induced hearing loss of the exact type suffered by Mr. Hankel qualifies as a "Personal Injury by Accident" and applying the *Arrant* court's holding to §1221(4)(p)'s text, Mr. Hankel should be given the opportunity to litigate his right to permanent, partial disability at the trial level. Minimally, summary judgment should be reversed and the matter remanded to the compensation court to allow the parties to bring forth expert testimony such as the trial court heard in both the *Arrant* and *Becker* cases.

As mentioned, I am aware of the decision rendered by the Fourth Circuit in *Hartman v. St. Bernard Par. Fire Dep't & Fara*, 20-0103 (La. App. 4 Cir. 5/20/20), 2020 WL 2561480, and *Dove v. State Farm Fire & Cas. Co.*, No. CV 16-740-JJB-RLB, (M.D. La. Mar. 1, 2017), 2017 WL 811876, however, I find that the holdings in those cases are in conflict with the Louisiana Supreme Court's decision in *Arrant*, *supra*.

I am also aware of La. R.S. 33:2581.1A, located in the Municipal Code, classifying a NIHL hearing loss as a disease or infirmity. However, that statute clearly states that it is applicable for purposes of the Municipal Code only, presumably employment benefits, and therefore I conclude that it does not apply in cases involving a determination of entitlement to worker's compensation benefits.

For these reasons, I would reverse the ruling of the worker's court granting summary judgment in favor of JPFD, remand the matter for further proceedings.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**SEPTEMBER 22, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

*Curtis B. Pursell*

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-613

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
MICHAEL F. NOLAN (APPELLEE)

**MAILED**
FRANK A. BRUNO (APPELLANT)
ATTORNEY AT LAW
807 HOWARD AVENUE
NEW ORLEANS, LA 70113